**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

---------------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
HearUSA, Inc.,                                                 :    Case No. 11-23341 (EPK)
                                                               :
Debtor.                                                        :
---------------------------------------------------------------------x

**OBJECTION OF SIEMENS HEARING INSTRUMENTS, INC. TO DEBTOR'S MOTION FOR ENTRY OF ORDER (A) APPROVING COMPETITIVE BIDDING AND SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES; (C) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (D) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) AUTHORIZING SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (F) GRANTING RELATED RELIEF**

Siemens Hearing Instruments, Inc ("Siemens"), by and through its undersigned counsel, hereby submits this objection ("Objection")[1] to Debtor's Motion for Entry of Order (a) Approving Competitive Bidding and Sale Procedures (the "Bidding Procedures"); (b) Approving Form and Manner of Notices; (c) Approving Form of Asset Purchase Agreement (the "APA"); (d) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (e) Authorizing Sale of Substantially all the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances and Interests (the "Sale"); and (f) Granting Related Relief (collectively, the "Motion") [ECF No. 27], dated May 16, 2011, and in support thereof respectfully states as follows:

---

[1]   Capitalized terms not otherwise defined herein have the meanings ascribed to them as set forth in the Motion, Bidding Procedures or the APA as the context indicates.

**PRELIMINARY STATEMENT**

1. The Motion seeks approval of Bidding Procedures, which as a consequence of limitations the Debtor seeks to impose and a lack of transparency, will chill competitive bidding with respect to the Debtor's assets, to the detriment of Debtor's creditors and its estate. Siemens, as a secured creditor with a security interest in the bulk of the assets to be sold, as the largest unsecured creditor by virtue of amounts owing under its Supply Agreement[2] with the Debtor and as a significant equity holder has an interest in ensuring the Bidding Procedures facilitate an open sale process that achieves the highest and best value to the estate. Siemens objects to the Bidding Procedures as they currently are not designed to maximize value for the Debtor's estate.

2. Further, the Bidding Procedures are objectionable as they abrogate Siemens' statutory right, pursuant to section 363(k) of the Bankruptcy Code, to credit bid amounts owing to Siemens by the Debtor under the Pre-Petition Loan Documents[3] and fail to make provision for the adequate protection of Siemens' interest as a secured creditor pursuant to section 363(e) of the Bankruptcy Code through attachment of liens to proceeds of the sale.

---

[2]  That certain Amended and Restated Supply Agreement, dated December 30, 2006, as the same has been amended, amended and restated or otherwise modified from time-to-time, by and between the Debtors, Siemens and certain subsidiaries of Siemens Aktiengesellshaft (the "Supply Agreement").

[3]  That certain Second Amended and Restated Credit Agreement, dated as of December 30, 2006, among the Debtor, as borrower, and Siemens Hearing Instruments, Inc., as lender, as the same heretofore has been amended, amended and restated or otherwise modified ("Pre-Petition Credit Agreement"), as well as the "Loan Documents" as defined in the Pre-Petition Credit Agreement (as each of such agreements and other instruments shall have heretofore been amended, amended and restated or otherwise modified), which include all of the agreements granting security interests and liens in property and assets of the Debtor to the Pre-Petition Lender (collectively, the "Pre-Petition Loan Documents").

**OBJECTION**

3.      Bidding procedures, in accordance with the objective of enhancing the value of the estate, should be designed to maximize value through a fair and open sale process and courts consistently have recognized that procedures intended to enhance competitive bidding are in the best interests of the estate.  *See*, *e.g.*, *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D.Ga. 1988) ("It is a well – established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re President Casinos, Inc.*, 314 B.R. 784, 786 (Bankr. E.D. Mo. 2004) (authorizing debtor to conduct asset sale but refusing to approve bid procedures that could have chilled bidder interest noting "[s]tructured bid procedures should provide a vehicle to enhance the bid process and should not be a mechanism to chill prospective bidders' interests."); *Wintz v. Am. Freightways, Inc. (In re Wintz Cos.)*, 230 B.R. 840, 846 (B.A.P. 8th Cir. 1999), aff'd, 219 F.3d 807 (8th Cir. 2000) (noting with respect to the procedures at issue on appeal that "[c]ourts have routinely approved such sale procedures… on the grounds that such terms encourage submission on the highest and best bids at the outset.") (citing *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand")).

A.      *The Bidding Procedures Do Not Facilitate an Open Sale Process*

4.      The Bidding Procedures as currently drafted do not provide for a level playing field among potential bidders and lack the transparency necessary to achieve a competitive process to maximize value.  The Bidding Procedures provide the Debtor with the unilateral right

to make certain determinations with respect to the bid process without transparency or notice to the parties involved. These rights, while ordinarily not *per se* objectionable, include the determination of whether a Bid is a Qualifying Bid or which Bid is the highest and best offer based upon subjective factors to be weighed and decided by the Debtor. What is objectionable is that the Debtor's subjective determination in most instances is without the requirement that such determinations be reasonable and that they be made in good faith and without prejudice against any potential bidder. A potential bidder must be assured that any Competing Transaction will be considered in good faith by the Debtor and not summarily dismissed.[4] Pursuant to the Bidding Procedures, the Debtor would be permitted summarily to reject potential bids based on any modifications to the APA.

5.      Additionally, the Bidding Procedures would not require the Debtor to advise a potential bidder as to whether its bid is a Qualified Bid. Each Bidder should promptly be advised as to whether its Bid is a Qualified Bid, and if not, the basis of such determination. Further, notice should be provided to parties in interest in the Debtor's chapter 11 cases and the rights of parties in interest to object to any determination with respect to a Qualified Bid and the selection of a Prevailing Bidder by the Debtor expressly should be preserved.

6.      With respect to the Proposed Purchaser, Siemens does not take issue with the provision of a break-up fee. However, Siemens objects to the Expense Reimbursement as it is not capped. The Expense Reimbursement should be capped to ensure that the aggregate

---

[4]     In addition to the Debtor's duty to obtain the highest and best price from the sale of assets for the bankruptcy estate, the Debtor is also subject to fiduciary duties which are owed to shareholders when conducting an auction. *See*, *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650,* 658-59 *(S.D.N.Y. 1992)*; *see also*, *Zaccaro v. Bowery Savings Bank (In re Jewel Terrace Corp.)*, 10 B.R. 1008 (E.D.N.Y. 1981) (recognizing that the trustee has a fiduciary duty to protect the interests of the debtor's shareholders and creditors, so that the trustee properly sought approval of the more advantageous contract for the sale of the debtor's assets). In addition to being the largest secured and unsecured creditor, Siemens also is the largest shareholder of the Debtor.

proposed compensation is appropriate in respect of the sale price and the role of the Proposed Purchaser as a stalking horse bidder.  An unlimited Expense Reimbursement is not warranted or necessary in connection with the Proposed Purchaser's participation at the Auction.

7. The Bidding Procedures provide for a Good Faith Deposit in the amount of $4,000,000.00 by Bidders.  However, there is no requirement that the Proposed Purchaser post a similar deposit.  The Bidding Procedures should require a Good Faith Deposit by all parties participating in the Auction, including the Proposed Purchaser so that any potential Prevailing Bidder will have an interest at stake in the process.

8. The Bidding Procedures also are objectionable in that they afford the Proposed Purchaser access to competing Bidders' information while shielding that information from other Bidders.  Either all the Bidders, including the Proposed Purchaser, should be provided with copies of Bids for Competing Transactions or none of the Bidders, including the Proposed Purchaser, should receive the information.  Bidding Procedures at p. 4 (service list in connection with the Bid Deadline) and p. 5 (providing "counsel to the Proposed Purchaser will receive a copy of any Bids at the time such Bid is submitted to the Debtor.")

9. The Bidding Procedures provide that, "[u]nless otherwise agreed by the Debtor, only the Debtor, its counsel and other professionals, representatives of the DIP Lender and its counsel, members of the Committee, if any, and its counsel, the Proposed Purchaser and its counsel and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction..."  Bidding Procedures at pp. 5-6.  As Siemens is the largest stakeholder in the Debtor's case, Siemens and its advisors should be granted similar access.  Additionally, while

seemingly implicit, it should be made expressly clear that a Qualified Bidder's counsel and its representatives may attend the Auction.

10. The Bidding Procedures currently provide that any Preliminary Interested Purchaser should direct requests for materials to Sonenshine but fail to provide a deadline or time period in which the responsive materials are to be provided to the Preliminary Interested Purchaser. Bidding Procedures at p. 2. A reasonable time limit should be included to ensure that parties are not prejudiced in their ability to construct a Competing Transaction due to a delay in receipt of the requested materials.

11. The Bidding Procedures currently provide that the Debtor "reserves the right to withhold any Diligence Materials that the Debtor, *in its sole discretion*, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Purchaser." Bidding Procedures at p. 2 (*emphasis added*). The Debtor's determination again should be subject to its reasonable good faith judgment and made in the absence of prejudice or bias. Additionally, the Debtor should be required immediately to notify any Preliminary Interested Purchaser if it determines to withhold Diligence Materials, identifying the materials to be withheld and giving reasons for withholding the materials, and such determination should be subject to challenge before the Bankruptcy Court on an expedited basis to avoid any prejudice to a Preliminary Interested Purchaser. Finally, the Debtor should be required to upload to the data room all material and information that has been disclosed to the Proposed Purchaser.

12. Additionally, as July 11, 2011 is the proposed deadline for submission of bids, the Debtor should be required to fully populate the data room by a date certain that is sufficient to permit Preliminary Interested Purchasers to conduct and complete due diligence. Siemens would

6

request that date certain be set for no later than June 3rd. This should be a very reasonable deadline in light of the Debtor's purported recent significant efforts to pursue potential strategic and/or financing opportunities.

B.      *Limitations Upon the Flexibility of Bidders to Structure Competing Transactions Chill Bidding*

13.     The Bidding Procedures also currently contain overly restrictive provisions governing whether a Bid will meet the requirements as a Qualified Bid. As part of the Auction Qualification Process, a Bid must be on terms that are "substantially similar, the same or better than the terms of the Asset Purchase Agreement" noting that a Bid will not be considered as qualified for Auction if it contains, among other things, additional representations and warranties, noting further that it is agreed and understood that "the Modified Asset Purchase Agreement… will remove provisions that apply only to the Proposed Purchaser." *See also*, Bidding Procedures provision pertaining to Contingencies. Modifications to the APA should not prohibit a Bid from being a Qualifying Bid. While consideration of the overall economic effect of such modifications and execution risk in connection therewith may be appropriate in considering whether a Bid is the highest and best offer, a provision which *per se* renders a Bid unqualified on this basis is inappropriate and will certainly chill bidding. This is particularly true where, as discussed in further detail below, the Bidding Procedures lack clarity with respect to which modifications are permissible. *See*, *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) (vacating the decision of the bankruptcy court which disqualified a bid as failing to, *inter alia*, conform with the contractual terms of a previously submitted bid of another party and remanding for a determination as to the highest and best offer and noting the purpose of court-imposed rules for the disposition of assets is to "ensure fair comparability between

competing bids and to protect other bidders…"). A Bid with modifications to the APA may be higher or better notwithstanding the existence of such modifications or the inclusion of certain representations and warranties.

14. As currently drafted, "Purchased Assets" are defined in the Bidding Procedures to be "as described in the Asset Purchase Agreement" and, as such, use of this term throughout the documentation in combination with the prohibition upon modifications to the APA would appear to require that any Competing Transaction include the assets described in the APA without deviation. We note that these provisions would be contrary to other provisions of the Bidding Procedures which would appear to merely require that a Competing Transaction be structured so as to involve all or substantially all of the Debtor's assets or operations.[5] Bidders should not be limited in their ability to structure a Competing Transaction so long as it is a transaction "involving all or substantially all of the Debtor's assets or operations" as required in the Auction Qualification Process. To the extent that the Bidding Procedures limit a Bidder's ability to select which assets are to be included or excluded in a Competing Transaction, such limitations are objectionable. To the extent that such a restriction was not intended and arises as a result of an error or oversight in the drafting process, the Bidding Procedures should be modified to make explicit that no such limitation exists.

15. Additionally, the APA specifically provides at section 2.5(a) that "no item in Excluded Assets shall be included in the 'Purchased Assets.'" To the extent that the prohibition on APA modifications can be read as precluding a Bidder from structuring a Competing Transaction to include one or more assets that are otherwise deemed Excluded Assets under the

---

[5] The Motion at ¶5 likewise defines the term Purchased Assets in reference to the APA as "substantially all of the Debtor's assets as described in the Asset Purchase Agreement."

APA, including, without limitation, the Supply Agreement with Siemens, the procedures would be objectionable. For example, the exclusion of the Supply Agreement from the APA with the Proposed Purchaser would result in a substantial rejection damage claim by Siemens against the Debtor's estate. A Bid that includes the Supply Agreement and avoids additional claims against the estate is a benefit to the estate and should not be summarily rejected. Additionally, as Siemens currently supplies 90% of the Debtor's needs with respect to certain goods, that Supply Agreement would likely be attractive to bidders other than the Proposed Purchaser. To maximize competitive bids, a Bidder should have the option to bid to acquire any assets of the Debtor, including any Excluded Assets, and any limitation on a Bidder's ability to include or exclude assets in structuring its Bid is objectionable.[6]

16.     Each restriction that is imposed upon a Bidder's ability to structure a Competing Transaction has a chilling effect upon the process. Departures from and modifications to the APA are more appropriately considered by the Debtor in the context of making a good faith determination of whether a Bid is the highest and best offer and not as a restrictive prohibition as to what constitutes a Qualifying Bid.

C.      *Additional Provisions of the Bidding Procedures are not Designed to Maximize Value*

17.     The Debtor currently has the option, but is not required, to designate the Backup Bidder as the new Prevailing Bidder in the event that the transaction with the Prevailing Bidder at the Auction is not consummated. *See*, Motion at ¶21 (providing the Debtor may so designate). In order to incentivize competitive bidding, the Debtor should be required rather than permitted to designate and consummate the transaction with the Backup Bidder as opposed to subjecting

---

[6] Relatedly, paragraph 20 of the proposed form of order must contain reciprocal language with respect to discretion of another Prevailing Bidder to have authority in its sole discretion to add a contract to the list of Scheduled Contracts.

9

the sale with the Backup Bidder to the Debtor's discretion if a transaction with the Prevailing Bidder is not consummated.

18.     Paragraph 25 of the proposed form of order provides that the APA will be approved "in all respects."  Such approval is premature and not appropriate at this time. The APA executed by the Proposed Purchaser is more appropriately considered, if the Proposed Purchaser is the Prevailing Bidder, at the Sale Hearing.[7]  Moreover, the APA contains provisions that purport to deal with Siemens' claims or rights against the Debtor and interests in the collateral.[8]  These provisions are wholly inappropriate for inclusion in the APA and certainly ought not to be approved "in all respects" by the Court at this time.

19.     In addition, in connection with the Auction, the Debtor has the ability to request at the Auction that a Qualified Bidder disclose direct and indirect legal ownership.  If the Debtor has reason to inquire as to direct or indirect ownership, these requests should be limited to instances where such Bidder is a special purpose entity and should precede the Auction.

D.     *Protection of Siemens' Interests as a Secured Party*

20.     The Bidding Procedures are objectionable in that they do not contemplate and indeed prohibit Siemens from credit bidding the secured obligations arising under the Pre-Petition Loan Documents by requiring all competing bids to contain a Minimum Cash Amount. "It is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under §363(k)."  *In re SubMicron Systems Corp.*, 432 F.3d 448, 459 (3d

---

[7] While it may be appropriate to seek approval of a form of APA at this stage, this is not what the proposed order seeks.

[8] For example, section 3.1(b) of the APA provides "[t]o the extent Sellers have any claims, offsets, counterclaims, defenses and/or causes of action against the First Lien Lender on the outstanding indebtedness of HUSA under the First Lien Loan Documents, then, subject to the terms of any order issued by the Bankruptcy Court, at the Closing, Sellers may escrow any funds payable to the First Lien Lender pursuant to such order issued by the Bankruptcy Court."

Cir. 2006) (holding that a secured creditor was entitled to bid the full amount of its claim, notwithstanding that the claim may be undersecured).[9]  Section 363(k) of the Bankruptcy Code provides, *inter alia*, with respect to a sale of property "that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."  In accordance with the foregoing, the Bidding Procedures must contemplate that Siemens may credit bid the current outstanding balance under the Pre-Petition Loan Documents.  Specifically, the Auction Qualification Procedures should clarify that with respect to Siemens the Minimum Cash Amount may be comprised in part of amounts owing under the Pre-Petition Loan Documents.  Further, the provisions in relation to the Auction should contain a reciprocal provision to that effect with respect to the Proposed Purchaser regarding the right of Siemens to credit bid at the Auction using the outstanding balance under the Pre-Petition Loan Documents.

21.    Siemens also is entitled pursuant to Section 363(e) of the Bankruptcy Code to adequate protection of its interests through the provision of a lien attaching to the proceeds of any sale in respect of obligations under the Pre-Petition Loan Documents in the same order of priority, and with the same validity, force and effect as prior to the sale.  A sale under 363(f) is subject to 363(e), which also conditions the sale on the provision of adequate protection.  "Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale."  S.REP. NO. 989, 95th Cong., 2d Sess. 56

---

[9] Given the sale price, it would seem improbable that Siemens could be viewed as undersecured and, thus, a credit bid under the current circumstances is certainly appropriate.  *See*, *In re Moritz*, 162 B.R. 618 (Bankr. M.D. Fla. 1994) (holding an unsecured creditor may not bid its claims noting "[i]t is clear, that while a secured creditor may setoff its allowed secured claims against the purchase price of a property of the estate to be sold by the Trustee pursuant to 363(k), there is no comparable provision which would permit unsecured creditors to offset their claims.")

11

(1978), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 4717 – 6760, 5842; *see also*, *In re Gaylord Grain LLC*, 306 B.R. 624 (B.A.P. 8th Cir. 2004) ("Ordinarily, when the trustee proposes to sell property free and clear of an interest in property, the bankruptcy court grants a replacement lien in the proceeds of the sale as a condition of the sale.")  Given the currently contemplated sale price set forth in the APA, it would appear that the Debtor's obligations to Siemens under the Pre-Petition Loan Documents are over-collateralized.  Such obligations include interest at the default rate as well as reimbursement for fees, costs and expenses, which amounts continue to accrue and to which Siemens is entitled.  For the avoidance of doubt, priority for such additional amounts should likewise attach to the proceeds.  Accordingly, no payment should be made from the proceeds of a consummated sale in respect of the debtor-in-possession financing prior to satisfaction of the obligations owing to Siemens under the Pre-Petition Loan Documents.

*Reservation of Rights*

22.     Siemens reserves its right to supplement and/or amend this Objection.

Dated:  May 27, 2011

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

BILZIN    SUMBERG    BAENA    PRICE    & AXELROD LLP
*Co-Counsel for Siemens Hearing Instruments, Inc.*
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/  Mindy A. Mora
Mindy A. Mora
Florida Bar No. 678910
mmora@bilzin.com

and

CLIFFORD CHANCE US LLP
*Co-Counsel for Siemens Hearing Instruments, Inc.*
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-8000
Facsimile:  (212) 878-8375

By: /s/ Jennifer C. DeMarco_____
       Jennifer C. DeMarco
       *(pro hac vice application pending)*
       jennifer.demarco@cliffordchance.com
       Rick B. Antonoff
       rick.antonoff@cliffordchance.com
       *(pro hac vice application pending)*
       Sarah N. Campbell
       sarah.campbell@cliffordchance.com
       *(pro hac vice application pending)*