UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

HearUSA, INC.                                              CHAPTER 11

      Debtor.                        /       CASE NO.: 11-23341-BKC-EPK

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION TO** *DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 361, 362, 363, AND 364, FED. R. BANKR. P. 4001(b) AND (c), AND LOCAL BANKRUPTCY RULES 4001-2 AND 4001-3, AUTHORIZING DEBTOR TO INCUR POST-PETITION INDEBTEDNESS, (B) GRANTING SECURITY INTERESTS AND SUPERPRIORITY EXPENSE CLAIMS, (C) AUTHORIZING USE OF CASH COLLATERAL, AND (D) GRANTING OTHER RELIEF* **[ECF# 18]**

The OFFICIAL COMMITTEE OF UNSECURED CREDITORS (the "Committee") of HearUSA, Inc (the "Debtor") by and through undersigned proposed[1] counsel, objects on a limited basis (the "Limited Objection") to the *Debtor's Emergency Motion for Interim and Final Orders Under 11 U.S.C. §§ 361, 362, 363, and 364, Fed. R. Bankr. P. 4001(B) and (C), and Local Bankruptcy Rules 4001-2 and 4001-3, Authorizing Debtor to Incur Postpetition Indebtedness, (B) Granting Security Interests and Superpriority Expense Claims, (C) Authorizing Use of Cash Collateral, and (D) Granting Other Relief* [ECF# 18] (the "Motion"). In support of the Limited Objection, the Committee state as follows:

## INTRODUCTION

The Committee objects to the Motion on the limited basis that William Demant Holdings A/S ("Demant") seeks, by virtue of its status as the proposed Debtor-in-Possession lender to the Debtor, to obtain liens on the estate's potential recoveries for actions that may be brought under Chapter 5 of the Bankruptcy Code. The Committee objects to Demant obtaining a lien on such

---

[1] An application to employ Ehrenstein Charbonneau Calderin as Counsel for the Committee was filed with this Court and is pending a hearing [ECF# 84].

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

Chapter 5 actions as a condition of its providing DIP financing because such recoveries should be retained for the benefit of the estate. The Debtor is seeking to sell substantially all of its assets, and Demant is the proposed stalking horse bidder as well as the proposed DIP lender. Under the terms of the proposed sale (the "Sale"),[2] if Demant prevails on its stalking horse bid and is the ultimate purchaser of the assets, Demants liens and security interests will be released. Moreover, if Demant is outbid for the assets, the cash component of any successful overbid will be more than sufficient to repay the DIP facility in full. In either case, if the sale is successful, there is no need for Demant to have a lien on potential avoidance action recoveries because the Debtor's repayment obligations will either be released or ably satisfied through the cash generated by a successful overbid. Under the terms of the Sale, Demant is more than protected, and it should not receive liens on potential avoidance recoveries as a component of its collateral for the DIP facility.

In the event that the Sale, however unlikely, fails or hits some other significant obstacle and does not return proceeds sufficient to satisfy all pre and post-petition claims of unsecured creditors (as is anticipated by Demant's stalking-horse bid), then the Committee's interest in obtaining recoveries on avoidance actions for the benefit of impaired unsecured creditors becomes acute. In such a "disaster" scenario, it is possible that Siemens' senior liens and Demant's junior liens will consume any and all cash and other estate assets to the detriment of unsecured creditors. In such a scenario, the unsecured creditors would be greatly prejudiced by Demant's lien on avoidance action recoveries because there would seemingly be no assets, including potential avoidance action recoveries, from which unsecured creditors could be paid.

---

[2] *See* Debtor's *Motion for Entry of Order (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement; (D) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E) Authorizing Sale of Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (F) Granting Related Relief* [ECF# 27].

## PROCEDURAL HISTORY

1.   On May 16, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11U.S.C. §§ 101-1532.

2.   The Debtor is operating its business and managing its affairs as a Debtor-in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.   On May 25, 2011, the Office of the United States Trustee appointed the Committee [ECF# 78]. On May 26, 2011, the Committee first organized and retained undersigned proposed counsel.

## ARGUMENT

4.   Demant should not require, as a component of the collateral for the proposed DIP financing, that it receive a lien on avoidance actions. Section 4.1 of the Credit and Security Agreement recites that Demant's lien and security interests in all of the Debtor's existing and after-acquired property will be junior to those of Siemens Hearing Instruments, Inc. ("Siemens"), the "First Lien Lender." Section 364(d) of the Bankruptcy Code allows Demant to "prime" Siemens for providing DIP financing to the Debtor, yet Demant is choosing to take a junior lien on the Debtor's assets. Demant, however, does not see fit to be so generous toward unsecured creditors. Despite its willingness to subordinate itself to Siemens, and for reasons that are not clear to the Committee, Demant insists on obtaining a lien on avoidance actions as a condition of providing DIP financing. Given the richness of the proposed Sale and its willingness to subordinate itself to Siemens, there is no good reason to permit Demant to obtain a lien on avoidance action recoveries that should otherwise benefit unsecured creditors. That provision should be stricken from the Collateral.[3]

---

[3] The term "Collateral" is defined in the Credit and Security Agreement and includes *inter alia*: ". . . a fully perfected security interest in substantially all of the existing and after-acquired real property and personal, tangible

3

5.      Demant and Siemens have confidence in the Sale returning enough value to satisfy the DIP facility that Demant agreed to subordinate its priming lien rights to Siemens. Demant may have done so for the expediency of avoiding litigation or other strategic reasons. Those considerations, however, should not permit Demant to then grasp for what is traditionally collateral reserved for unsecured creditors – namely, avoidance actions and related recoveries. Demant should only have recourse to avoidance actions as a last resort, and not as a component of its primary Collateral. Given the confidence that most, if not all, the significant constituencies in the case have that the sale will result in a high value and that Demant or some other cash buyer will be the ultimate purchaser of the assets, the Debtor's obligation to repay the DIP facility will be satisfied in full from the Sale proceeds and Demant's liens will be released.[4] In either case, Demant does not need a lien on avoidance recoveries. Accordingly, Demant should agree to strike the proposed lien on potential recoveries from avoidance actions as a component of the Collateral.

6.      As confident as everyone seems to be that the Sale will be a great success for the estate, the Committee is more concerned about the possibility that the Sale fails in some meaningful respect and unsecured creditors are left significantly impaired as a result. In that unlikely scenario, unsecured creditors may need recourse to potential avoidance recoveries in order to enhance their impaired distributions. Demant would most likely be protected by virtue of its liens on every other asset of the Debtor and would not need to rely on the time, cost, and uncertainty attendant with avoidance recoveries to secure repayment of the DIP facility. The Committee realizes, of course, that there is a range of outcomes on the Sale spectrum. At the far

---

and intangible assets of the Company including . . . Avoidance Actions (to the extent permitted in the Final DIP Order). ECF# 18 at p.23. It is telling that the Security Agreement includes this hedging language. The parenthetical language reveals that Demant is aware that the proposed lien on avoidance actions is a reach on their part and not a "dealbreaker."

[4] See Credit and Security Agreement, § 3.1, p.12.

4

end of that range lies a scenario in which the Sale craters, any attempt to reorganize is an abject failure, and the unsecured creditors are otherwise left with nothing from which to satisfy their claims.[5] It is that scenario in which recoveries from avoidance actions become the only recourse for unsecured creditors to realize any value. It is that scenario for which unsecured creditors must be prepared. Accordingly, the Committee objects to Demant obtaining a lien on any recoveries from avoidance actions.[6]

**WHEREFORE**, the OFFICIAL COMMITTEE OF UNSECURED CREDITORS respectfully requests that the Court sustain the Limited Objection, pare any lien in favor of Demant on potential avoidance recoveries from the Collateral, and for such other and further relief as the Court deems proper.

Dated:  May 27, 2011.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

**EHRENSTEIN CHARBONNEAU CALDERIN**
Proposed Attorneys for The Official Committee of Unsecured Creditors
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T:  305. 722.2002     F:  305. 722.2001

By:     */s/Robert Paul Charbonneau*
ROBERT PAUL CHARBONNEAU, ESQUIRE
Florida Bar No.:  968234
rpc@ecclegal.com
DANIEL L. GOLD, ESQ.
Florida Bar No.: 761281
dg@ecclegal.com

---

[5] Contemporaneous with this Limited Objection, the Committee has filed an objection to the Bid Procedures Motion in so far as the proposed APA includes avoidance actions in any sale of the assets.
[6] Given the short time frame in which it has been in existence and enjoyed the benefit of counsel, the Committee reserves the right to amend this Objection before the interim hearing to approve the proposed DIP financing.