

**ORDERED in the Southern District of Florida on June 08, 2011.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Case

HEARUSA, INC.,[1]                                          Case No. 11-23341-BKC-EPK

     Debtor.

_____/

**ORDER (A) APPROVING COMPETITIVE BIDDING AND
SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES;
(C) APPROVING ASSET PURCHASE AGREEMENT; (D) SCHEDULING DATES TO
CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE,
INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (E) AUTHORIZING SALE OF SUBSTANTIALLY ALL THE DEBTOR'S
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS; AND (F) GRANTING RELATED RELIEF**

     **THIS CAUSE** came before the Court on May 31, 2011 at 9:30a.m. in West Palm Beach,

Florida upon the *Motion For Entry of Order (A) Approving Competitive Bidding and Sale*

*Procedures; (B) Approving Form and Manner of Notices; (C) Approving Asset Purchase*

---

[1] The address of the Debtor is 1250 Northpoint Parkway, West Palm Beach, FL 33407, Attn: Gino Chouinard, Interim CEO, President and COO; and the last four digits of the taxpayer identification number of the Debtor are (8248).

*Agreement; (D) Scheduling Dates To Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E) Authorizing Sale of Substantially All The Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (F) Granting Related Relief* (the "Bid Procedures Motion" or the "Motion")[2] [D.E. 27] filed by HEARUSA, INC. ("HUI") the above-captioned debtor and debtor in possession (the "Debtor" or the "Company"). Having reviewed the Bid Procedures Motion and the record in these cases, including the *Declaration of Joseph J. Luzinski In Support of Chapter 11 Petitions and First Day Relief* [D.E. 5] (the "Declaration") and having considered the statements of counsel for the Debtor and William Demant Holdings A/S or its permitted assigns, the proposed purchaser (the "Proposed Purchaser"), and the evidence adduced by the Debtor (including proffers of evidence admitted into evidence without objection), the Court finds that establishing procedures for a sale of the Purchased Assets (as defined below) in accordance with this Bidding Procedures Order, is in the best interests of the Debtor's estate. Accordingly,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.    The Court has jurisdiction over the Motion and the transaction contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion, the bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") or that certain Asset Purchase Agreement dated as of May 16, 2011 among William Demant Holdings A/S or its permitted assigns, as purchaser (the "Proposed Purchaser"), William Demant Holdings A/S, guarantor and HearUSA, Inc. and Auxiliary Health Benefits Corporation d/b/a/ National Ear Care Plan (as subsidiary of the Debtor), as seller (as amended, modified or supplemented, the "Asset Purchase Agreement"), as applicable.

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper

under 28 U.S.C. §§ 1408 and 1409;

      C.      The statutory bases for the relief requested in the Motion are (i) sections 105, 363,

364 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the

"Bankruptcy Code"), and (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014 and

(iii) Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the Southern

District of Florida (the "Local Rules");

      D.      Good and sufficient notice of the Motion and the relief sought therein has been

given under the circumstances, and no other or further notice is required except as set forth

herein with respect to the Sale Hearing.  A reasonable opportunity to object or be heard

regarding the relief provided herein has been afforded to creditors, equity holders and other

parties in interest;

      E.      The Debtor's proposed notice of the Bidding Procedures is appropriate and

reasonably calculated to provide all interested parties with timely and proper notice of the

Auction, the sale of substantially all of the Debtor's assets (the "Purchased Assets"), and the

Bidding Procedures to be employed in connection therewith;

      F.      The Debtor articulated good and sufficient reasons for the Court to:  (i) approve

the Bidding Procedures; (ii) schedule the Sale Hearing, approve the manner of notice of the

Motion and the Sale Hearing, and set the Sale Objection Deadline (as defined below); and

(iii) approve the procedures for the assumption and assignment of certain executory contracts

and unexpired leases (collectively, the "Assumed Executory Contracts"), including notice of

proposed cure amounts;

G.      The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, its creditors, equity holders and other parties in interest; and

H.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

IT IS THEREFORE ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The Bidding Procedures, attached hereto as Exhibit 1, are hereby incorporated herein and approved in their entirety.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "Bid Deadline") is **July 21, 2011 at 4:30 p.m. (prevailing Eastern Time)**.  No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid meets the requirements set forth in the Bidding Procedures. For the avoidance of doubt, the Asset Purchase Agreement provided by the Proposed Purchaser constitutes a Qualified Bid.

5.      The Debtor may sell the Purchased Assets, and enter into the transactions contemplated by the Asset Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

6.      If Qualified Bids, other than the Qualified Bid of the Proposed Purchaser, are timely received by the Debtor in accordance with the Bidding Procedures, the Auction shall take

place on **July 29, 2011 at 10:00 a.m**. **(prevailing Eastern Time)** at the offices of Berger Singerman, P.A., 350 East Las Olas Blvd., Suite 1000, Fort Lauderdale, 33301, or such other place and time as the Debtor shall notify all Qualified Bidders, including the Proposed Purchaser, the official committee of unsecured creditors appointed in this chapter 11 case (the "Committee"), and their respective professionals, counsel for the Proposed Purchaser, counsel for Siemens Hearing Instruments, Inc. ("Siemens") and other invitees.  The Auction shall be conducted in accordance with the Bidding Procedures.  If, however, no Qualified Bid, other than the Qualified Bid submitted by the Proposed Purchaser, is received by the Bid Deadline, then the Auction will not be held and the Debtor shall seek final approval of the Asset Purchase Agreement with the Proposed Purchaser at the Sale Hearing.

7.     The Proposed Purchaser shall be entitled to credit bid each round at the Auction using the current outstanding balance of the DIP Loan (which amount shall be announced at the Auction by the Proposed Purchaser and Debtor to inform all of the participants in the Auction of such amount), and the Break-up Fee, defined below as a portion of any subsequent bid by the Proposed Purchaser.

8.     The Sale Hearing shall be held before the Court on **August 1, 2011 at** 9:30 a.m.**. (prevailing Eastern Time);** or at such later date and time as counsel and interested parties may be heard.

9.     Objections, if any, to the Sale contemplated by the Asset Purchase Agreement must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, Flagler Waterview Building, 151 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401 (or filed electronically via CM/ECF), on or before 4:30 p.m. (prevailing Eastern

Time) on the earlier of (i) seven (7) business days prior to the date of the Auction or (ii) **July 22, 2011** (the "Sale Objection Deadline"); and (d) be served upon (i) counsel to the Debtor, Berger Singerman, P.A., 350 East Las Olas Blvd., Suite 1000, Ft. Lauderdale, Florida 33301, Attn: Brian K. Gart, Esq. (bgart@bergersingerman.com) and Debi Evans Galler, Esq. (dgaller@bergersingerman.com), (ii) counsel to the Committee, Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, FL 33131, Attn: Robert P. Charbonneau, Esq. (rpc@ecclegal.com) and Daniel L. Gold, Esq. (dg@ecclegal.com), (iii) counsel to the Proposed Purchaser, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Sharon L. Levine, Esq. (slevine@lowenstein.com) and Peter H. Ehrenberg, Esq. (pehrenberg@lowenstein.com); and (iv) the Office of the United States Trustee, 51 SW 1st Ave # 1204, Miami, FL 33130-1614, Attn: Heidi Feinman, Esq. (heidi.feinman@usdoj.gov) , in each case, so as to be actually received no later than 4:30 p.m. (prevailing Eastern Time) on the same day.

10.     The notice, substantially in the form attached hereto as Exhibit 2 (the "Sale Notice"), is hereby approved.

11.     On or before three (3) business days after entry of this Bidding Procedures Order, the Debtor will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee; (c) the Securities and Exchange Commission; (d) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets, may have claims, contingent or otherwise, in connection with the Debtor's

ownership of the Purchased Assets or have any known interest in the relief requested by the Motion; (e) the state and local environmental agencies in the jurisdictions where the Debtor owns or leases real property; (f) counsel to the DIP Lender; (g) the United States Attorney's office for the Southern District of Florida; (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bidding Procedures Order; (i) counsel to the Committee; (j) all parties to any litigation involving the Debtor; (k) all counterparties to any executory contract or unexpired lease of the Debtor; (l) all other known creditors and interest holders of the Debtor; and (m) all potential bidders, including the Proposed Purchaser, previously identified or otherwise known to the Debtor

12.    **Copies of exhibits to the Bid Procedures Motion (including the Asset Purchase Agreement) may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn: Debi Evans Galler, Esq.; Tel. (305) 755-9500; email at dgaller@bergersingerman.com.   In addition, copies of the aforementioned (i) will be available for review on the website of the Debtor's appointed claims, noticing and balloting agent, Trustee Services, Inc. ("TSI"), at www.hearUSA-bkc.com, (ii) may be requested by telephone at 1-888-369-8915, and (iii) may be found on the Pacer website, http://ecf.flsb.uscourts.gov.**

13.    In addition to the foregoing, as soon as practicable, but in any event no later than five (5) business days after the entry of this Bidding Procedures Order, the Debtor shall publish the Sale Notice (modified for publication, as necessary) in *The Wall Street Journal*, national edition.

14.    The notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as <u>Exhibit 3</u> (the "<u>Cure Notice</u>"), is hereby approved.

15.    On or before four (4) business days after the entry of this Bidding Procedures Order, the Debtor shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor parties to the Scheduled Contracts.  The Cure Notice shall identify the Scheduled Contracts and provide the cure amounts that the Debtor believes must be paid to cure all prepetition defaults under the Scheduled Contracts (collectively, the "<u>Cure Amounts</u>" and individually, a "<u>Cure Amount</u>").

16.    Unless the non-Debtor party to a Scheduled Contract files an objection (the "<u>Cure Amount Objection</u>") to its scheduled Cure Amount, the assumption and assignment to the Proposed Purchaser of the Scheduled Contracts or the ability of the Proposed Purchaser to provide adequate assurance of future performance by the Sale Objection Deadline and serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline on the same day to:  (a) the Debtor, HearUSA, Inc., 1250 Northpoint Parkway, West Palm Beach, FL   33407, Attn:   Gino Chouinard, Interim CEO, President and COO (gchouinard@hearusa.com; (b) counsel for the Debtor, Berger Singerman, P.A., 350 East Las Olas Blvd, Suite 1000, Ft. Lauderdale, Florida 33301, Attn: Brian K. Gart, Esq. (bgart@bergersingerman.com) and Debi Evans Galler, Esq. (dgaller@bergersingerman.com); (c) counsel to the Committee, Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, FL 33131, Robert P. Charbonneau, Esq. (rpc@ecclegal.com) and Daniel L. Gold, Esq. (dg@ecclegal.com); (d) counsel to the Proposed Purchaser, Lowenstein Sandler PC, 65 Livingston    Avenue,    Roseland,    NJ    07068,    Attn:    Sharon    L.    Levine,    Esq.

(slevine@lowenstein.com) and Peter H. Ehrenberg, Esq. (pehrenberg@lowenstein.com); and (e) the Office of the United States Trustee, 51 SW 1st Ave # 1204, Miami, FL 33130-1614, Attn: Heidi Feinman, Esq. (heidi.feinman@usdoj.gov); such non-Debtor party shall be deemed to consent to the Cure Amount proposed by the Debtor and shall be forever enjoined and barred from seeking an additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtor, its estate or the Proposed Purchaser (or other Prevailing Bidder) on account of the assumption and assignment of the Scheduled Contracts and shall be deemed to have consented to the proposed assumption and assignment.  In addition, if no timely Cure Amount Objection is filed, the Proposed Purchaser (or other Prevailing Bidder) shall enjoy all the rights and benefits under all Scheduled Contracts without the necessity of obtaining any party's written consent to the Debtor's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment or to object or contest that the Proposed Purchaser (or other Prevailing Bidder) has not provided adequate assurance of future performance.  Information regarding adequate assurance of future performance submitted as part of any Qualified Bid with respect to Scheduled Contracts shall be provided, upon request to Debtor's counsel made on or before the Bid Deadline, to the requesting non-Debtor party to a Scheduled Contract within twenty-four (24) hours of the Bid Deadline.

17.    If the Proposed Purchaser is not the Prevailing Bidder, the non-Debtor parties to the Scheduled Contracts shall have until the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Prevailing Bidder can provide adequate assurance of future performance as

required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection"); provided, however, that if the Proposed Purchaser is the Prevailing Bidder, all Adequate Assurance Objections must be filed by the Sale Objection Deadline; provided, further, however, that any objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Prevailing Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

18.     In the event of a dispute regarding:  (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder (including the Proposed Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Proposed Purchaser or other Prevailing Bidder, as applicable or as provided in Section 21 below, is authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Proposed Purchaser) without any further notice to or action, order or approval of the Court.

19.     Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Scheduled Contracts, the Proposed Purchaser or other Prevailing Bidder, as applicable, shall have authority, in its sole discretion, to remove any contract or lease from the list of Scheduled Contracts either (i) at the Auction, or (ii) within five (5) business days after the Bankruptcy Court sustains, in whole or in part, such non-Debtor party's Cure Amount Objection or Adequate Assurance Objection; in either such case, the Debtor shall not assume and assign

10

such Scheduled Contract to the Proposed Purchaser or other Prevailing Bidder, as applicable, who removed such contract or lease from any list of Scheduled Contracts.

20.    Notwithstanding anything to the contrary herein, nothing in this Order shall extend the Debtor's time to assume or reject any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; provided, however, that the Debtor retains all rights to seek such an extension after notice and an opportunity for a hearing consistent with the applicable provisions of the Bankruptcy Code and Rules.

21.    In the event any party to a Scheduled Contract timely objects to the calculation of the Cure Amount for such Scheduled Contract designated by Debtor and alleges that the Cure Amount for such Scheduled Contract exceeds the amount calculated by Debtor for such Scheduled Contract (the amount of such excess Cure Amount for the Scheduled Contract in question, the "Excess Cure Amount"), then, (i) Debtor shall provide written notice to Proposed Purchaser of such Cure Amount objection and the amount of such Excess Cure Amount for each of the proposed Assumed Contracts, and (ii) Proposed Purchaser shall, within three business days after receipt of such notice from Debtor either (a) notify Debtor that Proposed Purchaser elects not to assume such Scheduled Contract if the Excess Cure Amount is in excess of ten percent of the Cure Amount for such Scheduled Contract and (b) take no action with respect to such notice, in which case, such Scheduled Contract shall continue to be assumed by Proposed Purchaser at the Closing.   At the Closing, Debtor shall retain the aggregate Excess Cure Amounts for all Assumed Contracts in escrow and shall use commercial reasonable efforts to resolve such discrepancy with such Scheduled Contract parties after the Closing.   In the event any such discrepancies are resolved by Debtor, then, Debtor shall refund such Excess Cure Amounts to Proposed Purchaser less any out of pocket expenses incurred by Debtor to resolve

such matter(s).  In the event Debtor does not resolve such discrepancy with such Scheduled Contract party in question, then, Debtor shall deliver such Excess Cure Amount to the Scheduled Contract parties in question.

22.    Within two (2) business days after the Closing Date, the Debtor will file a complete list of the Scheduled Contracts that were assumed and assigned as Assumed Executory Contracts, as of the Closing Date, to the Proposed Purchaser or to the Prevailing Bidder, to the extent that the Prevailing Bidder is not the Proposed Purchaser.

23.    The notice of assumption and assignment of the Assumed Executory Contracts, substantially in the form attached hereto as Exhibit 4 (the "Assumption Notice"), is hereby approved.

24.    The Sale Hearing may be continued, from time to time, without further notice to creditors, equity holders or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

25.    The form of the Asset Purchase Agreement, as modified by this Order, is approved in all respects.  The Debtor is authorized by the Court to execute and deliver an amendment to the Asset Purchase Agreement to incorporate the modifications to such Asset Purchase Agreement which are set forth in this Bidding Procedures Order.  To the extent a conflict exists between the terms of the Asset Purchase Agreement and this Bidding Procedures Order, the terms of this Bidding Procedures Order shall control and govern.

26.    Other than the Proposed Purchaser, no party submitting an offer or Bid for the Purchased Assets or a Qualified Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

27.    In the event the Debtor consummates an Alternative Transaction, provided that the Asset Purchase Agreement has not been terminated by Seller in accordance with sections 4.4 (k) or (m), a break-up fee of $2,000,000 (the "Break-up Fee") shall be paid to the Proposed Purchaser from the sale proceeds at closing.    Notwithstanding anything to the contrary in the Asset Purchase Agreement, all references to the "Expense Reimbursement" in the Asset Purchase Agreement are and shall be deleted.

28.    If an Auction is conducted, the party with the next highest and best Qualified Bid after the Bid made by the Prevailing Bidder or otherwise second best Qualified Bid at the Auction, as determined by the Debtor, in the exercise of its reasonable business judgment, will be designated as the backup bidder (the "Backup Bidder")..

29.    In consideration for receiving the Break-up Fee, if the Proposed Purchaser is not the Prevailing Bidder, the Proposed Purchaser agrees to continue to act as a Backup Bidder at the Proposed Purchaser's last highest bid announced at the Auction, even if it is not determined to be the Backup Bidder.

30.    To the extent that the Purchased Assets contain personally identifiable information, the proposed sale, upon consummation, will transfer to the Proposed Purchaser (or other Prevailing Bidder) such information subject to any existing privacy policy or policies of the Debtor in place as of the date hereof governing such information, subject to further restrictions as may be recommended by the appointed Consumer Privacy Ombudsman and ordered by the Court.

31.    Except as otherwise provided in the Asset Purchase Agreement, the Bid Procedures or this Bidding Procedures Order, the Debtor further reserves the right as it may determine to be in the best interests of its estate, after consultation with the Committee, to:

(a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Purchased Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice.  In making such determination, the Debtor may take account of non-price considerations, such as the risk that the purchaser will fail to close. For the avoidance of doubt, the Proposed Purchaser is hereby deemed to be a Qualified Bidder and the Asset Purchase Agreement is hereby deemed to be a Qualified Bid.

32.    To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in this case (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control.  The Debtor's obligations under this Bidding Procedures Order, the provisions of this Bidding Procedures Order and the portions of the Asset Purchase Agreement pertaining to the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtor, and the reorganized or reconstituted debtor, as the case may, after the effective date of a confirmed plan

or plans in the Debtor's case (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code).

33.    To the extent there are any inconsistencies between the terms of this Bidding Procedures Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Bidding Procedures Order shall govern.

34.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

35.    All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.    The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

37.    The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

# # #

Submitted by:
Brian K. Gart, Esq.
Berger Singerman, P.A.
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, FL  33301
Tel: 954-525-9900
Fax: 954-523-2872
Email: bgart@bergersingerman.com

**EXHIBIT 1 to the Bidding Procedures Order**

**(Bidding Procedures)**

## BIDDING PROCEDURES[1]

By the Bidding Procedures Motion dated May 16, 2011, HearUSA, Inc., (the "Debtor"),[2] sought approval of, among other things, the procedures through which the Debtor will determine the highest and best bid  for the sale of substantially all of its assets (the "Purchased Assets") described in the Asset Purchase Agreement by and among, William Demant Holdings A/S or its permitted assigns, as purchaser (the "Proposed Purchaser"), William Demant Holdings A/S, as guarantor, the Debtor and Auxiliary Health Benefits Corporation d/b/a National Ear Care Plan, as seller thereto, dated as of May 16, 2011 (the "Asset Purchase Agreement"), a copy of which is to be attached to the proposed Sale Order as Exhibit 1, attached as Exhibit A to the Bidding Procedures Motion.

On June _____, 2011, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtor to determine the highest and best price for the Purchased Assets through the process and procedures set forth below (the "Bidding Procedures").

### Marketing Process

#### Contact Parties

The Debtor, in consultation with its investment banker, Sonenshine Partners LLC ("Sonenshine"), has developed a list of parties whom the Debtor believes may potentially be interested in and who the Debtor reasonably believes would have the financial resources to consummate a competing transaction to that of the Proposed Purchaser (a "Competing Transaction"), which list includes both potential strategic buyers and potential financial sponsors (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtor and Sonenshine intend to contact the Contact Parties after the Petition Date to explore their interest in pursuing a Competing Transaction.  The Contact Parties may include parties whom the Debtor or its advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtor will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtor may distribute to each Contact Party an "Information Package," comprising:

(a)    A cover letter;

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Asset Purchase Agreement, as applicable.

[2]    The address of the Debtor is 1250 Northpoint Parkway, West Palm Beach, FL  33407, Attn:  Gino Chouinard, Interim CEO, President and COO; and the last four digits of the taxpayer identification number of the Debtor are (8248).

(b)     A copy of these Bidding Procedures; and

(c)     A copy of a confidentiality agreement (unless the party has already signed a confidentiality agreement).

***Access to Diligence Materials***

To participate in the bidding process and to receive access to then current and reasonably available due diligence materials (the "Diligence Materials"), a party must submit to the Debtor an executed confidentiality agreement in the form and substance satisfactory to the Debtor and evidence demonstrating the party's financial capability with respect to the Competing Transaction as determined by the Debtor.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Purchaser" and shall be provided prompt access to the Diligence Materials in no event later than one (1) business day following such request.  All due diligence requests must be directed to Sonenshine who shall have updated the virtual data room with all of the Diligence Materials by June 6, 2011, subject to the reservation below.  To the extent Sonenshine updates the virtual data room from and after June 6, 2011, whether based upon a request from a Preliminary Interested Purchaser or otherwise, notice will be provided to all Preliminary Interested Purchasers that the Diligence Materials have been so supplemented and access to such updates shall be provided, subject to the reservation below.

For any Preliminary Interested Purchaser who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold any Diligence Materials that the Debtor, in its sole discretion, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Purchaser.  The Debtor shall notify Committee counsel, counsel to Siemens Hearing Instruments, Inc. ("Siemens"), and such Preliminary Interested Purchaser if it determines that it should withhold any Diligence Materials, generally identifying the materials to be withheld and the basis for such determination.

## Auction Qualification Process

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtor (in consultation with the Committee) to satisfy each of the following conditions:

(a)     Good Faith Deposit:  Each Bid must be accompanied by a deposit in the amount of $4,000,000 to an interest bearing escrow account to be identified and established by the Debtor (the "Good Faith Deposit").

(b)     Same or Better Terms:  The Bid must be on terms that, in the Debtor's business judgment, are substantially similar, the same or better than the terms of the Asset Purchase Agreement.  A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Competing Transaction (the "Modified Asset Purchase Agreement").  A Bid shall include a copy of the Asset Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase

2

price); provided, however, that the terms of the Modified Asset Purchase Agreement are substantially similar, the same or better than the terms of the Asset Purchase Agreement. A Bid must propose a Competing Transaction involving all or substantially all of the Debtor's assets or operations. A Bid must propose a purchase price equal to or greater than the sum of (i) $72,500,000 in cash (or such other equivalent consideration, including any credit bid asserted pursuant to Section 363(k) of the Bankruptcy Code), plus (ii) the outstanding Obligations under the DIP Loan Documents in cash (clauses ((i) and (ii) are collectively called the "Minimum Cash Amount"), plus an amount equal to the liabilities being assumed under the Asset Purchase Agreement plus the total Cure Amount (as defined in the Asset Purchase Agreement) being paid or reimbursed under the Asset Purchase Agreement. A Bid may not be considered by Sellers as qualified for the Auction if (i) such Bid contains additional representations and warranties, covenants, closing conditions, termination rights other than as may be included in the Asset Purchase Agreement (it being agreed and understood that the Modified Asset Purchase Agreement shall modify the Asset Purchase Agreement as needed to comply in all respects with the Bidding Procedures Order and will remove provisions that apply only to the Proposed Purchaser as the stalking horse bidder), (ii) such Bid is not received by Debtor and Proposed Purchaser in writing on or prior to the Bid Deadline (as defined herein), and (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby; and (iv) such bid contains a break-up fee, expense reimbursement, or similar type of payment. A Bid must obligate the Bidder to pay, to the extent provided in the Asset Purchase Agreement, all Cure Amounts and any cure amounts with respect to the Assumed Executory Contracts for which an Assumption Notice is provided. The Bid shall also identify any executory contracts and unexpired leases of the Debtor that the Bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction.

(c)     Corporate Authority: The Bid must include written evidence acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor (in consultation with the Committee) of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(d)     Proof of Financial Ability to Perform: The Bid must include written evidence that the Debtor (in consultation with the Committee) concludes demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information must include, inter alia, the following:

     (i)     contact names and numbers for verification of financing sources;

     (ii)    evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of

3

an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close the Competing Transaction;

(iii)    the Bidder's current financial statements (audited if they exist), <u>provided</u>, that if the Bidder is an entity formed solely for the purpose of the Bid, the Bidder shall include current financial statements (audited if they exist) for such Bidder's equity holders; and

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor (in consultation with the Committee) demonstrating that such Bidder has the ability to close the Competing Transaction; <u>provided</u>, <u>however</u>, that the Debtor shall determine, in consultation with the Committee and Debtor's advisors, whether the written evidence of such financial wherewithal is acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(e)    <u>Contingencies</u>:  A Bid may not (i) contain more restrictive representations and warranties, covenants, termination rights, financing, due diligence contingencies other than as are currently included in the Asset Purchase Agreement (it being agreed and understood that such Bid shall modify the Asset Purchase Agreement as needed to comply in all respects with the Bidding Procedures Order (including removing any termination rights in conflict with the Bidding Procedures Order) and will remove provisions that apply only to the Proposed Purchaser as the stalking horse bidder) and (ii) be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(f)    <u>Irrevocable</u>:  A Bid must be irrevocable through the time of the Auction (as defined herein), <u>provided</u>, <u>however</u>, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

(g)    <u>Bid Deadline</u>:  Regardless of when a party qualifies as a Preliminarily Interested Purchaser, the following parties must actually receive a Bid in writing, on or before **July 21, 2011 at 4:30 p.m. (prevailing Eastern Time)** or such earlier date as may be agreed to by the Debtor (the "<u>Bid Deadline</u>"): (i) the Debtor, HearUSA, Inc., 1250 Northpoint Parkway, West Palm Beach, FL  33407, Attn:  Gino Chouinard, Interim CEO, President and COO (gchouinard@hearusa.com); (ii) counsel for the Debtor, Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Ft. Lauderdale, Florida 33301, Attn: Brian K. Gart, Esq. (bgart@bergersingerman.com) and Debi Evans Galler, Esq. (dgaller@bergersingerman.com); (iii) counsel to the official committee of unsecured creditors appointed in this chapter 11 case (the "<u>Committee</u>"), Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, FL

33131, Attn: Robert P. Charbonneau, Esq. (rpc@ecclegal.com) and Daniel L. Gold, Esq. (dg@ecclegal.com); (iv) counsel to the Proposed Purchaser, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Sharon L. Levine, Esq. (slevine@lowenstein.com) and Peter H. Ehrenberg, Esq. (pehrenberg@lowenstein.com); (v) Sonenshine Partners, LLC, 400 Park Avenue, 17th Floor, New York, New York 10022, Attn:    Jennifer Doré Russo (jdrusso@sonenshinepartners.com); and (vi) counsel to Siemens,    Bilzin Sumberg, et al., 1450 Brickell Avenue, Suite 2300, Miami, Florida 33131, Attn: Mindy A. Mora, Esq. (mmora@bilzin.com) and Clifford Chance US LLP, 31 West 52nd Street, New York, New York 10019 Attn: Jennifer C. DeMarco, Esq. (jennifer.demarco@cliffordchance.com)    and    Rick    B.    Antonoff,    Esq., (rick.antonoff@cliffordchance.com).    If the Debtor receives one or more Qualified Bids (as defined below), as soon as practicable after the Bid Deadline, the Debtor shall file a notice disclosing the identity and aggregate consideration offered by such Qualified Bid(s).  If the Debtor does not receive any other Qualified Bid(s) on or before the Bid Deadline, the Debtor shall file a notice cancelling the Auction (as defined below) and shall proceed to seek approval of the Qualified Bid evidenced by the Asset Purchase Agreement.

A Bid received from a Bidder on or before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."

For purposes of the Auction, the Asset Purchase Agreement submitted by the Proposed Purchaser is a Qualified Bid and the Proposed Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that bidders must satisfy to be a Qualified Bidder.  The Proposed Purchaser shall not be required to take any further action in order to participate in the Auction, or if the Asset Purchase Agreement submitted by the Proposed Purchaser is the Successful Bid (as defined herein) or the Backup Bid (as defined herein), to be named the Prevailing Bidder (as defined below) or the Backup Bidder (as defined below), as applicable.  In accordance with these Bidding Procedures, counsel to the Proposed Purchaser and Siemens will receive a copy of any Bids at the time such Bid is submitted to the Debtor.  The Debtor (in consultation with the Committee)shall inform counsel to the Proposed Purchaser and Siemens whether the Debtor will consider such Bids to be Qualified Bids within three (3) calendar days after the Bid Deadline.

## Auction

If one or more Qualified Bids (other than the Asset Purchase Agreement submitted by the Proposed Purchaser) are received by the Bid Deadline, the Debtor (in consultation with the Committee) will conduct an auction (the "Auction") to determine the highest and best Qualified Bid.  This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estates, including, among other things, the following:  (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to the Asset Purchase Agreement  requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to Sellers of such modifications or delay; (d) the total consideration to be received by Sellers;

(e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (f) the net benefit to the estate; and (g) the impact of the transaction on any actual or potential litigation (collectively, the "Bid Assessment Criteria"). The highest and best Bid must include cash in an amount no less than the Minimum Cash Amount. If no Qualified Bid (other than the Asset Purchase Agreement) is received by the Bid Deadline, the Debtor shall not conduct the Auction. Unless otherwise agreed to by the Proposed Purchaser in its sole discretion, only Qualified Bidders may participate in the Auction.

The Auction shall take place on **July 29, 2011 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301, or such other place and time as the Debtor shall notify all Qualified Bidders, including the Proposed Purchaser, the Committee, counsel for the Proposed Purchaser, counsel for Siemens and other invitees. The Auction shall be conducted according to the following procedures:

(a)    The Debtor shall conduct the Auction (in consultation with the Committee), and

(b)    The Auction may be transcribed by a certified court reporter and it may be videotaped should the Debtor elect to do so.

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the "Auction Baseline Bid"). Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Purchased Assets and at the Debtor's request, each Qualified Bidder must disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

Unless otherwise agreed by the Debtor, only the Debtor, its counsel and other professionals, representatives of the DIP Lender and its counsel, members of the Committee and its counsel, the Proposed Purchaser and its counsel, representatives of Siemens and its counsel, and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Proposed Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

(c)    Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(i)    The Initial Overbid must be a purchase price equal to or greater than the sum of (i) $72,500,000 plus (ii) the outstanding obligations under the DIP Loan Documents in cash, plus an amount equal to the liabilities being assumed under the Asset Purchase Agreement plus the total Cure Amount (as defined in the Asset Purchase Agreement) being paid or reimbursed under the Asset Purchase Agreement.

Any Incremental Bid after the Initial Overbid shall be made in increments valued at not less than $250,000. Additional consideration in excess of the amount set forth in the minimum overbid may include cash and/or noncash consideration.

(ii)     Remaining Terms Are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtor accepts a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtor in consultation with the Committee), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close the Alternative Transaction proposed by such Overbid and performance obligations under any assumed contracts.

(iii)     Announcing Overbids.

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtor's estates based on, inter alia, the Bid Assessment Criteria.

(iv)     Consideration of Overbids.

The Debtor reserves the right, in consultation with the Committee, in its reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Alternative Transaction at the prevailing Overbid amount.

(d)     Backup Bidder.

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest Qualified Bid after the Bid made by the Prevailing Bidder (as defined herein) or otherwise next best Qualified Bid at the Auction, as determined by the Debtor, in the exercise of its reasonable business judgment, will be designated as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid, if any, (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is sixty (60) days after the date of the Sale Hearing (the "Outside Backup Date"); provided, however, that notwithstanding the foregoing, in no event shall the Outside Backup Date be later than one hundred and twenty (120) days following the Petition Date or (ii) the date of closing of a transaction with the Prevailing Bidder or with the

Backup Bidder (such transaction, an "Alternative Transaction").    Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtor may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtor will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Prevailing Bidder's deposit, if any, shall be forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available damages from the defaulting Prevailing Bidder.  The deposit of the Backup Bidder, if any, shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the transaction with the Prevailing Bidder and (ii) the Outside Backup Date.

If an Auction is conducted, the Proposed Purchaser shall be entitled to credit bid using the outstanding balance of the DIP Loan (as defined in the DIP Loan Documents), and the Breakup Fee as a portion of the Proposed Purchaser's bid. If the Proposed Purchaser is not the prevailing party at the conclusion of such Auction (such prevailing party, the "Prevailing Bidder"), regardless of whether the Proposed Purchaser is the next highest bidder at the Auction, the Proposed Purchaser shall keep its bid open to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon in the Auction) open and irrevocable until the Outside Backup Date; provided, however, that notwithstanding the foregoing, in no event shall the Outside Backup Date be later than one hundred and twenty (120) days following the Petition Date or (ii) the date of closing of an Alternative Transaction.  For the avoidance of doubt, the Proposed Purchaser shall be required to maintain its bid to consummate the transactions contemplated by this Agreement even if the Proposed Purchaser is not the Prevailing Bidder or the initial Backup Bidder.  If the Proposed Purchaser is the Prevailing Bidder or otherwise closes on the transactions contemplated by this Agreement, then, at the Closing, the DIP Loan shall be deemed satisfied without reducing the Cash Balance or Deposit of the Purchase Price.

(f)      Additional Procedures.

The Debtor in consultation with the Committee may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures or the Asset Purchase Agreement.

(g)      Consent to Jurisdiction as Condition to Bidding.

The Proposed Purchaser and all Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Asset Purchase Agreement, the Auction or the construction and enforcement of any documents delivered in connection with a Bid.

(h)      Sale Is As Is/Where Is.

The Purchased Assets shall be conveyed at Closing free and clear of all liens, claims, interests and encumbrances, and in their then present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED,**" except for the explicit representations and warranties set forth in the Asset Purchase Agreement.

(i)    Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment, after consultation with the Committee and its financial and legal advisors, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Prevailing Bidder").  In making this decision, the Debtor, in consultation with the Committee and their financial and legal advisors, shall consider the Bid Assessment Criteria.  The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid.

The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

### Sale Hearing

The Court will conduct a hearing (the "Sale Hearing") on **August 1, 2011 at 9:30 a.m. (prevailing Eastern Time)**, at which the Debtor will seek approval of the transactions contemplated by the Asset Purchase Agreement with the Prevailing Bidder.  Objections, if any, to the sale of the Purchased Assets to the Prevailing Bidder and the transactions contemplated therewith must be in writing and filed with the Court on or before the earlier of **(i) seven (7) days prior to the date of the Auction; or (ii) on July 22, 2011 at 4:30 p.m.** and be served such that they are actually received by (a) counsel to the Debtor, Berger Singerman, P.A., Attn: Brian K. Gart, Esq. (bgart@bergersingerman.com), 350 East Las Olas Boulevard, Suite 1000, Ft. Lauderdale, Florida 33301, and Debi Evans Galler, Esq. (dgaller@bergersingerman.com), 200 South Biscayne Blvd., Suite 1000, Miami, FL  33131; (b) counsel to the Committee, Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, FL 33131, Attn: Robert P. Charbonneau, Esq. (rpc@ecclegal.com) and Daniel L. Gold, Esq. (dg@ecclegal.com); (c) counsel to the Proposed Purchaser, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Peter H. Ehrenberg, Esq. (pehrenberg@lowenstein.com) and (d) the Office of the United States Trustee, 51 SW 1st Ave # 1204, Miami, FL 33130-1614, Attn: Heidi Feinman, Esq. (heidi.feinman@bergersingerman.com).

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, if any, shall be held in one or more interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither the Prevailing Bidder nor the Backup Bidder, if any, shall be returned to such Qualified Bidder not later than three (3) business days after the Sale Hearing.  The Good Faith Deposit, if any, of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Prevailing Bidder and (b) the Outside

Backup Date.  Upon the return of the Good Faith Deposits, if any, their respective owners shall receive any and all interest that will have accrued thereon.  If the Prevailing Bidder timely closes the winning transaction, its Good Faith Deposit, if any, shall be credited towards its purchase price.

## Reservation of Rights

Except as otherwise provided in the Asset Purchase Agreement or the Sale Order, the Debtor further reserves the right as they may reasonably determine to be in the best interests of its  estate, after consultation with the Committee, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some or all of the Purchased Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify these Bidding Procedures as they may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice.  Notwithstanding the foregoing sentence, in the event that the Debtor made material modifications to the Bidding Procedures that are not consented to by the Proposed Purchaser, such material modifications shall permit the Proposed Purchaser to terminate the Asset Purchase Agreement and withdraw its bid without any liability to the Debtor, its estate or otherwise; provided, however, the Debtor may seek a determination from the Court that any such modifications are not material and should not permit the Proposed Purchaser to terminate the Asset Purchase Agreement in accordance with this paragraph.

**EXHIBIT 2 to the Bidding Procedures Order**

**(Sale Notice)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:                                                          Chapter 11 Case

HEARUSA, INC[1]                                          Case No. _____

      Debtor.

_____/

**<u>NOTICE OF AUCTION AND SALE HEARING</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

        1.    On May 16, 2011, HearUSA, Inc., (the "<u>Debtor</u>"), filed its Motion[2] for entry of an order (the "<u>Bidding Procedures Order</u>"), among other things, (a) approving Bidding Procedures for the sale of substantially all of the assets owned by the Debtor (the "<u>Purchased Assets</u>") as described in the Asset Purchase Agreement by and between William Demant Holdings A/S or its permitted assigns (the "<u>Proposed Purchaser</u>"), William Demant Holdings A/S, guarantor and the Debtor and Auxiliary Health Benefits Corporation d/b/a National Ear Care Plan (a subsidiary of the Debtor) dated as of May 16, 2011 (the "<u>Asset Purchase Agreement</u>"); (b) approving the Asset Purchase Agreement; (c) approving the form and manner of notice of the auction on the Purchased Assets and the Sale Hearing; (d) approving procedures relating to the assumption and assignment of contracts and leases; and (e) scheduling a sale hearing (the "<u>Sale Hearing</u>") to consider the sale of the Purchased Assets and setting objection and bidding deadlines with respect to the sale of the Purchased Assets.  The Motion additionally requests entry of an order (the "<u>Sale Order</u>") approving (i) the sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests contemplated by the Asset Purchase Agreement; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

        2.    On June ____ 2011, the United States Bankruptcy Court for the Southern District of Florida entered the Bidding Procedures Order [D.E. _____].  Pursuant to the Bidding Procedures Order, the Auction for the Purchased Assets shall take place on **July 29__, 2011 at 10 a.m. (prevailing Eastern Time)** at the offices of Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures

---

[1] The address of the Debtor is 1250 Northpoint Parkway, West Palm Beach, FL  33407, Attn:  Gino Chouinard, Interim CEO, President and COO; and the last four digits of the taxpayer identification number of the Debtor are (8248).

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion and/or the Bidding Procedures, as applicable.

Order as Exhibit 1, by no later than **July 21, 2011 at 4:30 p.m. (Eastern Time)** (the "Bid Deadline") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures. Parties interested in receiving information regarding the sale of the Purchased Assets should contact the Debtor's investment bankers, Sonenshine Partners, LLC, 400 Park Avenue, 17th Floor, New York, New York 10022, Attn: Jennifer Doré Russo, at (212) 944-3334 or by email at jdrusso@sonenshinepartners.com.

3.     To the extent that the Purchased Assets contain personally identifiable information, the proposed sale, upon consummation, will transfer to the Proposed Purchaser (or other Prevailing Bidder) such information subject to any existing privacy policy or policies of the Debtor in place as of the date hereof governing such information, subject to such further restrictions as may be recommended by the appointed Consumer Privacy Ombudsman and Ordered by the Court.

4.     The Sale Hearing to consider approval of the Sale of the Purchased Assets to the Proposed Purchaser or Prevailing Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable Erik P. Kimball, United States Bankruptcy Judge, 1515 North Flagler Dr., Courtroom 801B, West Palm Beach, FL  33401 on **August 1, 2011 at 1:30 p.m. (prevailing Eastern Time)**, or at such earlier date as counsel may be heard. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

5.     Objections, if any, to the sale of the Purchased Assets contemplated by the Asset Purchase Agreement, or the relief requested in the Motion (including with respect to cure amounts and adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, FL 33401, (or filed electronically via CM/ECF), on or before the earlier of **(i) seven (7) days prior to the date of the Auction; or (ii)  July 22, 2011**, or such earlier date and time as the Debtor may agree and (d) be served so as to be received no later than 4:30 p.m. (prevailing Eastern Time) on the same day, upon:  (i) counsel to the Debtor, Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Ft. Lauderdale, Florida 33301, Attn: Brian K. Gart, Esq. (bgart@bergersingerman.com), and Debi Evans Galler, Esq. (dgaller@bergersingerman.com); (ii) counsel to the Committee, Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, FL 33131, Attn: Robert P. Charbonneau, Esq. (rpc@ecclegal.com) and Daniel L. Gold, Esq. (dg@ecclegal.com); (iii) counsel to the Proposed Purchaser, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Peter H. Ehrenberg, Esq. (pehrenberg@lowenstein.com); and (iv) the Office of the United States Trustee, 51 SW 1st Ave # 1204, Miami, FL 33130-1614, Attn: Heidi Feinman, Esq. (heidi.feinman@usdoj.gov)

6.     In the event that the Proposed Purchaser is not the Prevailing Bidder at the Auction, the non-Debtor party to any Scheduled Contract(s) will have until the Sale Hearing to object to the Prevailing Bidder's ability to perform under such Scheduled Contract(s).

7.     This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such documents in their entirety.  **Copies of the Bid Procedures Motion, the Asset Purchase Agreement (including exhibits thereto), the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn: Debi Evans Galler, Esq.; Tel. (305) 755-9500; email at dgaller@bergersingerman.com.  In addition, copies of the aforementioned pleadings (i) will be available for review on the website of the Debtor's appointed claims, noticing and balloting agent, Trustee Services, Inc. ("TSI"), at www.hearUSA-bkc.com, (ii) may be requested by telephone at 1-888-369-8915, and (iii) may be found on the Pacer website, http://ecf.flsb.uscourts.gov.**

Dated: June __, 2011                    Respectfully submitted,

                                        BERGER SINGERMAN, P.A.
                                        *Counsel for the Debtor*
                                        350 East Las Olas Boulevard, Suite 1000
                                        Ft. Lauderdale, FL  33301
                                        Telephone:  (954) 525-9900
                                        Facsimile:   (954) 523-2872

                                        By:  /s/  *Paul Steven Singerman*
                                             Paul Steven Singerman
                                             Florida Bar No. 378860
                                             singerman@bergersingerman.com
                                             Brian K. Gart
                                             Florida Bar No. 381152
                                             bgart@bergersingerman.com

**EXHIBIT 3 to the Bidding Procedures Order**

**(Cure Notice)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:                                                  Chapter 11 Case

HEARUSA, INC., [1]                                      Case No.

          Debtor.

_____/

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES[2]**

**PLEASE TAKE NOTICE** that on May 16, 2011, the above-captioned debtor and debtor-in-possession (the "Debtor") filed a motion [D.E. 27] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") which seeks approval of key dates, times and procedures related to the sale of substantially all of the Debtor's assets (the "Purchased Assets") to  William Demant Holdings A/S, a  corporation or its permitted assigns (the "Proposed Purchaser") contemplated by the Asset Purchase Agreement. On June __, 2011, the Bankruptcy Court approved the Bidding Procedures [D.E. __].  On August 1, 2011, the Debtor intends to seek approval of, among other things, the sale of the Purchased Assets, including the assumption and assignment of certain executory contracts and unexpired leases.  To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR AS SET FORTH ON EXHIBIT A ATTACHED HERETO.[3]**

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, the Debtor **may** assume and assign to the Proposed Purchaser the executory contract(s) or unexpired lease(s) listed on Exhibit A attached hereto (each, an "Scheduled Contract") to which you are a counterparty.  The Debtor has conducted a review of its books and records and has determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set

_____

[1] The address of the Debtor is 1250 Northpoint Parkway, West Palm Beach, FL  33407, Attn:  Gino Chouinard, Interim  CEO, President and COO; and the last four digits of the taxpayer identification number of the Debtor are (8248).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

[3] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases.  This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

1

forth on <u>Exhibit A</u> attached hereto (the "Cure Amount"). **If you disagree with the proposed Cure Amount, object to the proposed assignment to the Proposed Purchaser of the Scheduled Contract(s) or object to the Proposed Purchaser' ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court no later than 4:30 p.m. (prevailing Eastern Time) on July 22, 2011, (the "Objection Deadline") and serve such objection on (a) the Debtor, HearUSA, Inc., 1250 Northpoint Parkway, West Palm Beach, FL 33407, Attn: Gino Chouinard (gchouinard@hearusa.com), Interim CEO, President and COO; (b) counsel for the Debtor, Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301, Attn: Brian K. Gart, Esq. (bgart@bergersingerman.com) and Debi Evans Galler, Esq. (dgaller@bergersingerman.com); (c) counsel to the official committee of unsecured creditors appointed in this chapter 11 case (the "Committee"), Ehrenstein Charbonneau Calderin, 501 Brickell Key Drive, Suite 300, Miami, FL 33131, Attn: Robert P. Charbonneau, Esq. (rpc@ecclegal.com) and Daniel L. Gold, Esq. (dg@ecclegal.com); (d) counsel to the Proposed Purchaser, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Peter H. Ehrenberg, Esq. (pehrenberg@lowenstein.com); and (e) The Office of the United States Trustee, 51 SW 1st Ave # 1204, Miami, FL 33130-1614, Attn: Heidi Feinman, Esq. (heidi.feinman@usdoj.gov) so that it is actually received no later than 4:30 p.m. (prevailing Eastern Time) on July 22, 2011.**

PLEASE TAKE FURTHER NOTICE that the Debtor proposes that if no objection to (a) the Cure Amount(s); (b) the proposed assignment of the Scheduled Contract(s) to the Proposed Purchaser or (c) adequate assurance of the Proposed Purchaser' ability to perform is filed by Objection Deadline, (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtor is correct, (ii) you shall be forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) you will be forever barred from objecting to the assignment of the Assumed Executory Contract(s) to the Proposed Purchaser.

PLEASE TAKE FURTHER NOTICE that in the event the Proposed Purchaser is not the Prevailing Bidder at the Auction, any counterparty to a Scheduled Contract shall have the right to object to the Prevailing Bidder's ability to perform on or before the Sale Hearing scheduled for **August 1, 2011 at 9:30 a.m. (prevailing Eastern Time)**. To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Prevailing Bidder's ability to perform.

PLEASE TAKE FURTHER NOTICE that with respect to any Scheduled Contract assumed and assigned to the Prevailing Bidder (including the Proposed Purchaser), all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Purchased Assets to the Prevailing Bidder (including the Proposed Purchaser) or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

2

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, with respect to any Scheduled Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Prevailing Bidder (including the Proposed Purchaser) to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Proposed Purchaser or other Prevailing Bidder, as applicable, may settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Proposed Purchaser) without any further notice to or action, order or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts.  Moreover, the Debtor explicitly reserves its rights, in their sole discretion, to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to an Scheduled Contract against the Debtor that may arise under such Scheduled Contract; (b) creates a postpetition contract or agreement or (c) elevates to administrative expense priority any claims of an counterparty to an Scheduled Contract against the Debtor that may arise under such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order, the Asset Purchase Agreement and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such documents in their entirety.  Copies of the Motion, the Asset Purchase Agreement, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Berger Singerman, P.A., 200 South Biscayne Blvd., Suite 1000, Miami, Florida 33131, Attn: Debi Evans Galler, Esq.; Tel. (305) 755-9500; email dgaller@bergersingerman.com.  In addition, copies of the aforementioned pleadings (i) will be available for review on the website of the Debtor's appointed claims, noticing and balloting agent, Trustee Services, Inc. ("TSI"), at www.hearUSA-bkc.com, (ii) may be requested by telephone at 1-888-369-8915, and (iii) may be found on the Pacer website, http://ecf.flsb.uscourts.gov.

Dated: June __, 2011                    Respectfully submitted,

                                        BERGER SINGERMAN, P.A.
                                        *Counsel for the Debtor*
                                        350 East Las Olas Boulevard, Suite 1000
                                        Ft. Lauderdale, FL  33301
                                        Telephone:  (954) 525-9900
                                        Facsimile:   (954) 523-2872

                                        By:  /s/  *Paul Steven Singerman*
                                                Paul Steven Singerman
                                                Florida Bar No. 378860

singerman@bergersingerman.com
Brian K. Gart
Florida Bar No. 381152
bgart@bergersingerman.com

## EXHIBIT A

[Counterparty Name]                    [Contract/Lease]                                        Cure Amount

**EXHIBIT 4 to the Bidding Procedures Order**

**(Assumption Notice)**

**DRAFT**  034784-0119

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:                                              Chapter 11 Case

HEARUSA, INC., [1]                                  Case No.

     Debtor.

_____/

**NOTICE OF ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACT OR UNEXPIRED LEASE**

     **PLEASE TAKE NOTICE THAT**:

     1.     A hearing (the "Sale Hearing")[2] was held at 9:30 a.m. on August 1, 2011 before the Honorable Erik P. Kimball, United States Bankruptcy Judge, in the Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, Courtroom 801B, West Palm Beach, Florida 33401.  At the Sale Hearing, the Bankruptcy Court entered an order (the "Sale Order") (a) approving the sale of the Purchased Assets to _____ (the "Purchaser") in accordance with the Asset Purchase Agreement, and (b) authorizing, among other things, the Debtor, pursuant to the terms of the Asset Purchase Agreement, to assume and assign certain executory contracts and unexpired leases to the Purchaser.

     2.     The Purchaser has elected to take assignment of the executory contracts and unexpired leases as set forth on Exhibit A hereto.

---

[1] The address the Debtor is 1250 Northpoint Parkway, West Palm Beach, FL  33407, Attn:  Gino Chouinard, Interim CEO, President and COO; and the last four digits of the taxpayer identification number of the Debtor are (8248).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

**EXHIBIT A**

[Counterparty Name/Address]          [Contract/Lease]                    Cure Amount