**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

*In re:*

HearUSA, INC.                                          CHAPTER 11

      **Debtor.**                               CASE NO.: 11-23341-BKC-EPK

_____/

**APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR APPROVAL OF EMPLOYMENT OF BRENT WILLIAMS, CPA AND THE FIRM OF DUFF & PHELPS, LLC., AS FINANCIAL ADVISORS TO THE COMMITTEE *NUNC PRO TUNC* TO JUNE 3, 2011**

**EXPEDITED HEARING REQUESTED**

     **The Committee seeks an expedited hearing on this Application to Employ Duff & Phelps , LLC as its financial advisors and forensic accountants because it requires immediate assistance in evaluating the Debtor's operations, debt position, and impending sale of assets. Additionally, the Committee believes the Debtor may object to this Application. While the Committee continues to work with the Debtor in a bona fide attempt to resolve any issues with this Application, the Committee requests an expedited hearing in light of the accelerated timetable for the sale of the Debtor's assets.**

     The OFFICIAL COMMITTEE OF UNSECURED CREDITORS (the "Committee") by and through undersigned counsel, respectfully requests the entry of an order of the Court authorizing the employment of BRENT WILLIAMS, CPA ("Mr. Williams" or "Applicant") and the firm of DUFF & PHELPS, LLC ("Duff & Phelps") to represent the Committee as financial advisors and forensic accountants in this case *nunc pro tunc* to June 3, 2011 (the "Application"), and states as follows:

<u>Background</u>

     1.     On May 15, 2011, the above-styled Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

2.      Since the Petition Date, the Debtor has operated its business as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.      The Committee was appointed on May 25, 2011, by the Office of the United States Trustee (the "UST") [ECF# 78].  On May 26, 2011, the Committee elected Daniel Stansky of JKG Group as the permanent chair of the Committee.  On that same day the Committee selected undersigned counsel as their proposed counsel.

4.      On June 3, 2011, the UST filed its *Amended Appointment and Notice of Appointment of Committee of Creditors Holding Unsecured Claims* [ECF# 123].

## Relief Requested

5.      The Committee supports this Application and believes that employing Mr. Williams and the firm of Duff & Phelps as financial advisors to the Committee is in the best interests of the Committee and the unsecured creditors more generally.  Accordingly, the Committee moves to retain Duff & Phelps pursuant to Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

6.      The Committee believes that in carrying out its obligations, it requires the immediate assistance of financial professionals.  Mr. Williams and Duff & Phelps will be assisting the Committee with the investigation and analysis of the Debtor's financial records, assessing the financial status and viability of the Debtor's business, evaluating potential bids in preparation for the sale of the Debtor's assets, analysis of possible Chapter 5 actions, and other financial related tasks where the Committee requires the assistance of sophisticated professionals as more fully set forth in the Affidavit of Brent Williams, attached hereto as **Exhibit "1"** (the "Affidavit").

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## Duff & Phelps Qualifications

7.      For more than twenty-five years Duff & Phelps (f/k/a Chanin Capital Partners, LLC ("Chanin") with respect to its Restructuring practice and the services primarily provided in connection with this matter) has provided financial advisory services to companies experiencing financial difficulties and has served as a financial advisor, investment banker, and provided forensic accounting services in dozens of bankruptcy cases, including some of the largest bankruptcy cases ever to have filed in the United States.  Certain of these engagements include Adelphia, Visteon Corporation, Six Flags, Inc., Hayes Lemmerz, Inc., Truvo Group, Idearc, Inc., Calpine, Delphi, Owens Corning, and Washington Group, among several others. Mr. Williams has over nineteen years of experience in investment banking, crisis management, and business reorganizations, including in the areas of financial restructuring, asset sales, in- and out-of-court restructuring, forensic and general accounting, and litigation support, among others. Additionally, Mr. Williams is a former Trustee in Bankruptcy in the Province of Ontario.

8.      Mr. Williams has personally served as financial advisor to the official committees of unsecured creditors in the following cases, among others:

      a)  Visteon Corporation

      b)  Dura Automotive

      c)  BHM Corporation

      d)  Intermet Corporation

      e)  Hayes Lemmerz, Inc.

      f)  Motor Coach Industries

      g)  Global Power Equipment Group

      h)  Truvo Group

3

**Duff & Phelps' Proposed Services Performed for the Committee**

9.      Upon retention, Duff & Phelps will work at the direction of the Committee to:

    a) Review and analyze the Company's operations, financial condition, business plan, strategy, and operating forecasts;

    b) Analyze any proposed financing;

    c) Analyze any sale, merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

    d) Assist in the determination of an appropriate go-forward/post emergence capital structure for the Company;

    e) Assist the Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring or Plan of Reorganization, including the value of the securities, if any, that may be issued to the Committee under any such restructuring or Plan;

    f) Evaluate the Company's debt capacity;

    g) If requested by the legal counsel to the Committee, prepare report(s) with respect to any/all proposed financings, the valuation of the Company and/or proposed merger, divestiture, joint-venture, or investment transaction. In addition, Duff & Phelps will provide expert testimony relating to such report(s) as well as other financial matters arising in connection with the bankruptcy;

    h) Provide the Committee with other appropriate general restructuring advice and litigation support.

**Duff & Phelps' Disinterestedness**

10.      As more fully set forth in the Affidavit, Mr. Williams and Duff & Phelps do not hold or represent any interest adverse to the Estate and the Committee believes that their employment would be in the best interest of the Estate.

Except as otherwise disclosed in the Affidavit and attached exhibits, Duff & Phelps has no connection with the Debtor, its affiliates, the Debtor's officers and directors, the Debtor's equity security holders, Siemens Hearing Instruments, Inc., or the attorneys and other professionals in

4

the case.  A comprehensive list of the names provided to Duff & Phelps by the Debtor and searched against Duff & Phelps' database is set forth in **Exhibit A** to the affidavit and incorporated herein by reference.  The names appearing on this list were manually reviewed to identify any matters on which work was performed in the past seven years.

11.    To the extent that Duff & Phelps has a connection with any of the foregoing and as set forth in **Exhibit B** to the Affidavit, that connection or representation is in matters wholly unrelated to this case. As set forth in the Affidavit, Duff & Phelps has run a check of its conflict system, which check has produced results demonstrating that Williams and Duff & Phelps are disinterested persons as required by 11 U.S.C. § 327 and as defined in 11 U.S.C. § 101(14). The conflict check results are explained more fully in the Affidavit.

12.    Duff & Phelps will periodically review its files during the pendency of this case to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that Duff & Phelps discovers any new relevant facts or relationships bearing on the matters described herein during the period of Duff & Phelps' retention, it will use reasonable efforts to file promptly a supplemental declaration.

<u>**Duff & Phelps Compensation**</u>

13.    Phelps has agreed to be compensated at the rate of $75,000.00 per month, but not to exceed that amount upon terms more fully set forth in the Engagement Letter attached as **Exhibit C** to the Affidavit.  As set forth in the Engagement Letter, the Debtor shall pay Duff & Phelps a cash Monthly Fee of (i) $75,000.00 per month for the term of the engagement *nunc pro tunc* to June 3, 2011.  The Monthly Fees shall be paid in advance on the first day of each month and shall be due and payable for all months from the inception of this engagement through the

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · <u>www.ecclegal.com</u>

earlier of (i) the termination of this agreement in accordance with section 2 of the Engagement Letter, or (ii) the Effective Date of a confirmed plan in the Chapter 11 Cases

14.    Duff & Phelps will seek reimbursement for the out of pocket expenses it incurs rendering services to the Committee, which shall include, but not be limited to travel, photocopying, delivery service, postage, vendor charges, business meals, computerized research, and other out-of-pocket expenses incurred in providing professional services. but such expenses are capped at $1,000.00 per month.

15.    Duff & Phelps intends to apply for and recognizes that its compensation for professional services rendered and reimbursement of expenses is subject to approval and adjustment by the Court in accordance with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 328, 330, and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, and consistent with the proposed terms of compensation set forth in the Engagement Letter.

16.    Wherever possible, Duff & Phelps will maintain records in $1/10^{th}$ of an hour increments which detail its services rendered to the Committee in this case. The description of services rendered shall include the category and nature of the services rendered, the approximate time expended in providing those services, and the individuals who provided provided such services on behalf of the Committee. Duff & Phelps will present such records of services rendered to the Court in the form of periodic fee applications.

17.    This compensation arrangement is certainly consistent with and, in fact, represents a discount in comparison with compensation arrangements entered into by Duff & Phelps and other comparable firms in connection with rendering services of this type in similar cases. The Committee believes that the compensation arrangement is reasonable, market-based,

6

appropriate for this case, and designed fairly to compensate Duff & Phelps for the services it will perform in this case and to cover its fixed and routine overhead expenses.

<strong><u>Indemnification</u></strong>

18.    Pursuant to the terms of the Engagement Letter, the Debtor shall provide indemnification and other obligations set forth in Schedule I to the Engagement Letter, which is hereby incorporated by reference.  Further, in the event that an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any action brought by or on behalf of or against the Committee or which otherwise relates to the Engagement Letter or the services rendered by Duff & Phelps to the Committee, the Debtor shall reimburse Duff & Phelps and the Indemnified Person for all reasonable expenses incurred by them in connection with such Indemnified Person appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel.

<strong><u>No Duplication of Services</u></strong>

19.    The Committee intends that the services of Duff & Phelps will complement the services of other professionals retained in the case without duplicating those services. The Committee recognizes that it has a fiduciary duty to the unsecured creditor body and the estate generally, and that Duff & Phelps will assist the Committee in discharging that duty. Duff & Phelps, however, understands that the Debtor has retained multiple professionals, and it agrees to work cooperatively with such professionals to avoid duplication of services and maximize the estate for the benefit of unsecured creditors and the estate more generally.

<strong><u>Notice</u></strong>

20.    Notice of this Application has been given to (i) the Office of the United States Trustee for the Southern District of Florida, (ii) counsel for the Debtor (iii) counsel for Siemens,

7

(iv) counsel for Demant Holdings, and (v) any other parties in interest requesting notice pursuant to Rule 2002. The Committee submits that, given the nature of the relief requested, no other or further notice of the relief requested is necessary.

21.     No prior application for the relief requested herein has been made to this or any other court.

*Remainder of page left intentionally blank*

8

## REQUEST FOR EXPEDITED HEARING

22.     Based upon discussions with counsel for the Debtor, the Committee believes that the Debtor may have an issue with all, or portions of, this Application. Concurrently with the filing of this Application, the Committee is providing a copy to counsel for the Debtor, and the Committee intends to work diligently with counsel for the Debtor to amicably resolve any issues the Debtor may have. However, the Committee cannot allow itself, and the fiduciary interests it represents, to be prejudiced by the delay in the filing of this Application. Given the rapid pace at which the investment banking process is proceeding in this case, and given the fact that the Court's next Omnibus Calendar is not until July 5, 2011, the Committee espectfully requests that the Court set this Application on an expedited basis.

**WHEREFORE,** the Committee respectfully requests entry of an Order authorizing the employment of Brent Williams, CPA and the firm of Duff & Phelps, to represent the Committee, pursuant to 11 U.S.C. §§ 327, 328, and 330, and for such other relief the Court deems necessary.

RESPECTFULLY SUBMITTED this 9th day of June.

By: _____

Daniel Stansky, COO Committee Chair
JKG Group
990 Rogers Circle, Suite 8
Boca Raton, FL 33487
T. 561-628-6927      F. 866-537-0425
EMAIL - dstansky@jkggroup.com

8

     ***I HEREBY CERTIFY*** *that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified  to practice in this Court as set forth in Local Rule 2090-1(A).*

**EHRENSTEIN CHARBONNEAU CALDERIN**
Attorneys for The Official Committee of Unsecured Creditors
501 Brickell Key Drive Key, Suite 300
Miami, Florida 33131
T:  305. 722.2002      F:  305. 722.2001

By:     */s/ Robert P. Charbonneau*
            ROBERT CHARBONNEAU, ESQUIRE
            Florida Bar No.:  968234
            rpc@ecclegal.com

9

# Ex. "1"

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
### www.flsb.uscourts.gov

*In re:*

HearUSA, INC.                                      CHAPTER 11

       Debtor.                          CASE NO.: 11-23341-BKC-EPK

_____/

### AFFIDAVIT OF DISINTERESTEDNESS OF PROPOSED FINANCIAL ADVISOR
### FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

STATE OF NEW YORK         )
                           ) SS:
COUNTY OF MANHATTAN      )

        **BEFORE ME**, the undersigned authority, personally appeared BRENT WILLIAMS in New York, New York, who after being duly sworn, deposes and says as follows:

        1.       I am a Managing Director of the Firm of Duff & Phelps, LLC ("Duff & Phelps"), with offices located at 55 East 52nd Street, Floor 31, New York, NY 10055. I am familiar with the matters set forth herein and make this Affidavit in support of the *Official Committee of Unsecured Creditors' Application to Employ Brent Williams and the Firm of Duff & Phelps as Financial Advisors to the Official Committee of Unsecured Creditors (the "Committee") (the "Application").* Additionally, I am a Certified Public Accountant ("CPA"), and current member of the Canadian Institute of Chartered Accountants.

        2.       The purpose of this Declaration is to provide the disclosures required under Section 327(a) of the United States Bankruptcy Code as necessary to a finding that Duff & Phelps qualifies as a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code. Consistent with Federal Rule of Bankruptcy Procedure 2014(a) and the Local Rules of this Court, this Declaration is intended as a verified statement setting forth to the best of my

knowledge, all of Duff & Phelps's connections with the Debtors, their professionals, the Committee's members, other parties in interest, and their professionals in these cases. In the event that additional connections within the scope of the foregoing Rule are discovered during the pendency of this case, Duff & Phelps will undertake to file supplementary disclosures as may become appropriate. In addition, this Affidavit sets forth Duff & Phelps' qualifications to serve as financial advisors to the Committee.

**<u>Duff & Phelps' Qualifications to Serve as Financial Advisors to the Committee</u>**

3.     For more than twenty-five years Duff & Phelps (f/k/a Chanin Capital Partners, LLC ("<u>Chanin</u>") with respect to our Restructuring practice and the services primarily provided in connection with this matter) has provided financial advisory services to companies experiencing financial difficulties and has served as a financial advisor, investment banker, and provided forensic accounting services in dozens of bankruptcy cases, including some of the largest bankruptcy cases ever to have filed in the United States.  Certain of these engagements include Adelphia, Visteon Corporation, Six Flags, Inc., Hayes Lemmerz, Inc., Truvo Group, Idearc, Inc., Calpine, Delphi, Owens Corning, and Washington Group, among several others. I have over nineteen years of experience in investment banking, crisis management, and business reorganizations, including in the areas of financial restructuring, asset sales, in- and out-of-court restructuring, forensic and general accounting, and litigation support, among others.  Moreover, I am a former Trustee in Bankruptcy in the Province of Ontario.

4.     I have personally served as financial advisor to the official committees of unsecured creditors in the following cases, among others:

      a)   Visteon Corporation

      b)   Dura Automotive

2

    c)  BHM Corporation

    d)  Intermet Corporation

    e)  Hayes Lemmerz, Inc.

    f)  Motor Coach Industries

    g)  Global Power Equipment Group

    h)  Truvo Group

## **Duff & Phelps' Proposed Services Performed for the Committee**

5.    Upon retention, Duff & Phelps will work at the direction of the Committee to:

    a) Review and analyze the Company's operations, financial condition, business plan, strategy, and operating forecasts;

    b) Analyze any proposed financing;

    c) Analyze any sale, merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

    d) Assist in the determination of an appropriate go-forward/post emergence capital structure for the Company;

    e) Assist the Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring or Plan of Reorganization, including the value of the securities, if any, that may be issued to the Committee under any such restructuring or Plan;

    f) Evaluate the Company's debt capacity;

    g) If requested by the legal counsel to the Committee, prepare report(s) with respect to any/all proposed financings, the valuation of the Company and/or proposed merger, divestiture, joint-venture, or investment transaction. In addition, Duff & Phelps will provide expert testimony relating to such report(s) as well as other financial matters arising in connection with the bankruptcy;

    h) Provide the Committee with other appropriate general restructuring advice and litigation support.

3

6.      Subject to the Court's approval of the Application, Duff & Phelps is willing to serve as the Committee's financial advisor to perform the services described above.

**<u>Duff & Phelps' Disinterestedness</u>**

7.      As more fully described below, Duff & Phelps and certain of its professionals – including managing directors, directors, vice presidents, associates, and analysts – may have been retained in the past, may represent presently, and/or have connections with certain of the Debtors' creditors, professionals, or parties in interest, and their professionals in this case. In all of the circumstances described, the matters have been and remain wholly and entirely unrelated to the representation of the Committee and do not impair Duff & Phelps' disinterestedness in this case or impair its ability to serve the Committee.

8.      Based upon information supplied by the Debtor, Duff & Phelps (i) searched its records and conflict check system and (ii) disseminated a written request for information to all of the professionals in its firm to identify any connection or relationship with the following entities (the "<u>Case Parties</u>"), among others:

      a.      The Debtor;

      b.      The Debtor's officers and directors;

      c.      The equity shareholders known to own more than five percent (5.0%) of outstanding stock of the Debtor;

      d.      The Debtor's twenty largest unsecured creditors;

      e.      Siemens Hearing Instruments, Inc.;

      f.      Counsel for Siemens Hearing Instruments, Inc.;

      g.      Counsel to the Debtor, Sonenshine Partners, LLC, and other known parties in interest.

4

A comprehensive list of the names provided to Duff & Phelps by the Debtor and searched against Duff & Phelps' database is set forth in **Exhibit A** attached hereto and incorporated herein by reference.  The names appearing on this list were manually reviewed to identify any matters on which work was performed in the past seven years.

       9.      Duff & Phelps has in the past represented, currently represents, or has connections with the persons and entities set forth on attached **Exhibit B** within the scope of Federal Rule of Bankruptcy Procedure 2014(a)**.** Exhibit B sets forth those persons and entities (i) currently represented by Duff & Phelps, (ii) recently (within the last 7 years) or currently represented by Duff & Phelps, (iii) professional firms involved in the case with whom or against whom Duff & Phelps recently worked or works (within the last 3 years), and (iv) those entities and parties in interest for whom Duff & Phelps recently served as a financial advisor or investment banker. In each instance and for each category of representation or connection disclosed on Exhibit B, Duff & Phelps connection to that party or representation to that party was or is wholly unrelated to this case. In each category of representation or connection in unrelated matters disclosed on Exhibit B, Duff & Phelps connection to that party does not and will not impair Duff & Phelps's representation of the Committee.

       10.     None of the matters on which Duff & Phelps consulted with the foregoing entities and professionals identified in paragraph 10 involved the Debtor or its related entities. Based upon the database search described above, Duff & Phelps does not represent any other entity having an adverse interest in connection with the case, and does not hold or represent an interest adverse to the estate with respect to the matters on which Duff & Phelps will be employed in accordance with section 327(a) of the Bankruptcy Code.

5

11.      Neither Duff & Phelps nor I represent any interest adverse to the Debtor, the creditors, the Committee, the known equity security holders, the known parties in interest, or the Estate more generally, and we are "disinterested persons" as required by 11 U.S.C. § 327(a) and as defined by 11 U.S.C. § 101(14).

12.      To the best of my knowledge, except as set forth herein, (a) Duff & Phelps has no connections with the Debtor, creditors, any other party in interest, or their respective attorneys and financial advisors; and (b) the Duff & Phelps professionals working on this matter are not relatives of the United States Trustee of the Southern District of Florida or of any known employee in the office thereof, or any United States Bankruptcy Judge for the Southern District of Florida as required by Fed.R.Bank.P. 2014.

13.      Neither Duff & Phelps nor I will represent any other entity in connection with this case and neither I nor the firm will accept any fee from any other party or parties in this case, except from the estate, unless otherwise authorized by the Court. As part of its regular practice, Duff & Phelps appears in many cases, proceedings, restructurings, and transactions involving many different entities, debtors, committees, law firms, financial consultants, and investment bankers in matters unrelated to this case. However, Duff & Phelps has not provided, and will not provide, any professional services to the Debtor, any of the individual creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to this chapter 11 case.

14.      The professional fees and costs incurred by Duff & Phelps in the course of its representation of the Official Committee of Unsecured Creditors shall be subject in all respects to the application and notice requirements of 11 U.S.C. §§ 330 and 331 and F.R.B.P. 2014 and 2016.

6

15.    Duff & Phelps has agreed to be compensated at the rate of $75,000.00 per month, but not to exceed that amount upon terms more fully set forth in the Engagement Letter attached hereto as **Exhibit C**.  As set forth in the Engagement Letter, the Debtor shall pay Duff & Phelps a cash Monthly Fee of (i) $75,000.00 per month for the term of the engagement *nunc pro tunc* to June 3, 2011.  The Monthly Fees shall be paid in advance on the first day of each month and shall be due and payable for all months from the inception of this engagement through the earlier of (i) the termination of this agreement in accordance with section 2 of the Engagement Letter, or (ii) the Effective Date of a confirmed plan in the Chapter 11 Cases.

16.    Duff & Phelps will also seek reimbursement for necessary expenses incurred, which shall include, but not be limited to travel, photocopying, delivery service, postage, vendor charges, business meals, computerized research, and other out-of-pocket expenses incurred in providing professional services. Duff & Phelps, however, has agreed to cap these expenses at an amount not to exceed $1,000.00 per month.

17.    There is no agreement of any nature, other than the shareholder agreement of our firm, as to the sharing of any compensation to be paid to the firm.  No promises have been received by Duff & Phelps, nor any member, or associate thereof, as to the compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

18.    Duff & Phelps intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this chapter 11 case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the Southern District of Florida, and the orders of the Court, including any order setting procedures for interim and final compensation.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

## **Indemnification**

19.     Pursuant to the terms of the Engagement Letter, the Debtor shall provide indemnification and other obligations set forth in Schedule I to the Engagement Letter, which is hereby incorporated by reference.  Further, in the event that an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any action brought by or on behalf of or against the Committee or which otherwise relates to the Engagement Letter or the services rendered by Duff & Phelps to the Committee, the Debtor shall reimburse Duff & Phelps and the Indemnified Person for all reasonable expenses incurred by them in connection with such Indemnified Person appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel.

20.     I have read the Application, and to the best of my knowledge, information, and belief, the contents of the Application are true and correct.

21.     This concludes my declaration.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____

Brent Williams, CPA

**SWORN TO AND SUBSCRIBED** before me this _____ day of June 2011.

_____

NOTARY PUBLIC AT LARGE, STATE OF NEW YORK

NOTARY PUBLIC, STATE OF NEW YORK

Print Name:   _____

Commission No.   _____

My Commission Expires:   _____

8

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

*In re:*

HearUSA, INC.                              CHAPTER 11

　　　　Debtor.                          CASE NO.: 11-23341-BKC-EPK

_____/

# Executed Affidavit to be filed under separate cover.

# Ex. "A"

# SCHEDULE 1

## POTENTIAL PARTIES IN INTEREST

**I.**      **DEBTOR**

HearUSA, Inc.

**II.**      **DIRECTORS**

Archibald, Thomas
Bagni, Bruce
Gitterman, Joseph
Labadie, Michael
Mclachlan, David
Tangun, Ozarslan A.
Webster, Stephen W.

**III.**      **OFFICERS**

Beninati, Kevin
Beyer, Cindy
Brough, Candace
Chouinard, Gino
Fell, Eugene
Hansbrough, Stephen
Loomis, Robert
Pottlitzer, Denise
Punal, Francisco
Singer, Jeffrey

**IV.**      **ACCOUNTS PAYABLE PARTIES (TOP 50)**

A PLUS AUDIOLOGY & HEARING AID
AARP
ADVISORY FINANCIAL GROUP
BDO SEIDMAN
BOWLES, DAVID
BRYAN CAVE
CISCO SYSTEMS CAPITAL CORP.
COVERALL NORTH AMERICA, INC.
DAILY NEWS
DALCO CONTINGENCY, LLC
DOWD, KATHY

DR. MICHAEL KOSKUS
FAMILY HEARING AID CENTER
FEDERAL EXPRESS CORP
GRANITE TELECOMMUNICATIONS
GREENBERG TRAURIG, P.A.
GROSS REALTY ASSOCIATES LLC
HANSATON ACCOUSTICS INC.
HOGAN HOLDINGS OF THE
JACKSONVILLE SPEECH & HEARING
JKG CORPORATION
K & L GATES LLP
KDT SOLUTIONS
MCI
NEWSDAY·
OAKTREE PRODUCTS INC
OFFICEMAX NORTH AMERICA
OTICON INC
Palmeri, Janine
PERRY, WILLIAM D. DR
PHONAK
PRECISION LABORATORIES INC.
PRECISION MOLD LABORATORIES
RESOUND CORPORATION
SLG GRAYBAR MESNE LEASE LLC
SOUND 1365, LLC
SPECTRUM BRANDS
SPROUTLOUD MEDIA NETWORKS, LLC
ST. PETERSBURG TIMES
STARKEY
SVF KENDALL MIAMI, LLC
TARGET COMMERCIAL INTERIORS
UNITED HEALTHCARE OF FL, INC.
UNITED HEALTHCARE OF FLORIDA
UNITRON
USI INSURANCE SERVICES, LLC
V & F ENTERPRISES CORP
VERIZON BUSINESS
WARNER TECH-CARE PRODUCTS

## V.      CUSTOMERS

Baum, Douglas
Buskirk, Ruth
Canfield, Harold
Ceku, Ellios
Cluchey, Mike

Curry, Joseph
Font, Joseph
Giordano, Sandy
Hodges, George(Larry)
Huffman, Eileen
Johannesen, Morten
Kosovich, Patricia
Lauto, Steve
Maerz, Mary
Norberg, Hazel
Pratt, Kenneth
Secreto, Mary
Stein, Faye
Streb, Dave
Wright, Jane

## VI.  MATERIAL CONTRACT PARTIES

Dalco Contingency LLC
Ford Credit
Office Max
Rayovac

## VII.  SHAREHOLDERS (>5%)

Arcadia Capital Advisors, LLC
Michel Labadie
Paul A. Brown, M.D.
SIAR Capital LLC (Jack Silver)
Siemens Hearing Instruments, Inc.

## VIII.  LENDER (MAJOR)

Siemens Hearing Instruments, Inc.

## IX.  SUPPLIER (MAJOR)

Siemens Hearing Instruments, Inc.

## X.  UTILITY PROVIDERS

ACCESS POINT, INC.
Access US
ACTION CARTING
ACTIVE DISPOSAL SVC
ALLIED WASTE SERVICES

AMERENUE
AMERICAN ELECTRIC POWER
AMERICAN WATER & ENERGY SAVERS
AMS BILLING
AT&T
AT&T LONG DISTANCE
AT&T PRO-CABS
BLANC DEPT OF PUBLIC WORKS
BLUE DIAMOND DISPOSAL, INC.
BRIGHT HOUSE NETWORKS
BROADVIEW NETWORKS
CABLEVISION
CAVALIER
CENTRAL HUDSON GAS & ELECTRIC CORP
CenturyLink
Charter Business
CHARTER TOWNSHIP OF GRAND
CINCINNATI BELL
CIPOLLINI CARTING & RECYCLING, INC.
CITIZEN GAS FUEL COMPANY
CITY OF ADRIAN
CITY OF BOYNTON BCH
CITY OF BRADENTON
CITY OF COLUMBIA, MISSOURI
CITY OF DEERFIELD BCH
CITY OF EAST LANSING
CITY OF HIALEAH
CITY OF HOLLYWOOD
CITY OF MONROE
CITY OF NEW PORT RICHEY
CITY OF PEMBROKE PINES
CITY OF PETOSKEY
CITY OF PT ST LUCIE
CITY OF SARASOTA
CITY OF ST PETERSBURG
CITY OF WEST PALM BCH
COLUMBIA GAS OF OHIO
Comcast
COMPORIUM COMMUNICATIONS
CON EDISON
CONSUMERS ENERGY
CORPORATE SERVICES CONSULTANTS LLC
DANIEL FINLEY ALLEN & CO., INC.
DEERFIELD DISPOSAL SERVICES, LLC
DEPTFORD TWNSP
DFT Communications

DTE ENERGY
DUKE ENERGY
EARTHLINK
ENERGY CO-OP (NATIONAL GAS)
F P L
FIRSTENERGY
FLORIDA GOVERNMENTAL UTILITY AUTHORITY - FGUA
FORT PIERCE UTILITIES AUTHORITY
FRONTIER
GLOBAL CROSSING
GRANITE TELECOMMUNICATIONS
HERITAGENERGY
INTERNATIONAL ENVIRONMENTAL
JERSEY CENTRAL POWER
JONES HAULING
LACLEDE GAS COMPANY
LANCASTER COUNTY WATER & SEWER DISTRICT
LANSING BOARD OF WATER & LIGHT (BWL)
MANAGEMENT (IEM)
MCUCS MANATEE COUNTY UTILITIES
METROPOLITAN PAPER RECYCLING
METROPOLITAN ST LOUIS SEWER
METROPOLITAN TELECOMMUNIC
MIAMI-DADE WATER & SEWER DEPT
MIDCO WASTE
MID-HUDSON CABLE
MISSOURI AMERICAN WATER
MOHAWK VALLEY WATER AUTHORITY
NATIONAL FUEL
NATIONALGRID
NEW JERSEY NATURAL GAS
NORTH HUDSON SEWERAGE AUTH
NORTHLAND COMMUNICATIONS
NSTAR
NYSEG
OPTIMUM CABLEVISION
ORANGE & ROCKLAND
ORLANDO UTILITIES COMMISSION
PAETEC
PBCWUD (PB CTY WATER)
PEABODY MUNICIPAL LIGHT PLANT
PIEDMONT NATURAL GAS
PPL ELECTRIC UTILITIES
PROGRESS ENERGY
PSE&G
PUBLIC STORAGE

QWEST
REPUBLIC WASTE SVC
RG&E
RIVERHEAD SANITATION & CARTG
ROXBURY WATER COMP
SARASOTA COUNTY ENVIRONMENTAL
SOUTH JERSEY GAS
SOUTHFIELD RETAIL CENTER, LLC
SPRINT
TAMPA ELECTRIC
TIME WARNER CABLE
UGI PENN NATURAL GAS, INC.
UNITED WATER NEW JERSEY
Verizon
Verizon Florida LLC
Verizon North
VILLAGE OF ARCADE
WASTE MANAGEMENT
WASTE MANAGEMENT OF DADE COUNTY
WASTE MANAGEMENT OF PASCO
WASTE SERVICES OF FLA, INC
WATER AND WASTEWATER SERVICES
WINDSTREAM CORPORATION
WITHLACOOCHEE RIVER ELEC

## XI.    JUDGES - SOUTHERN DISTRICT OF FLORIDA

Honorable Paul G. Hyman
Honorable A. Jay Cristol
Honorable Laurel M. Isicoff
Honorable Erik P. Kimball
Honorable Robert A. Mark
Honorable John K. Olson
Honorable Raymond B. Ray

## XII.    DISTRICT JUDGES - SOUTHERN DISTRICT OF FLORIDA

Honorable Donald L. Graham
Honorable Patricia A. Seitz
Honorable Daniel T.K. Hurley
Honorable Alan S. Gold

## XIII.    UNITED STATES TRUSTEES

Steven Turner
Heidi Feineman

Steven Schneiderman

# Ex. "B"

<u>DUFF & PHELPS</u>

CONFLICT CHECK RESULTS

<u>Duff & Phelps has active engagements with the following entities (or a related entity):</u>

Bryan Cave LLP
Siemens Hearing Instruments, Inc.
US Bancorp
Cisco Systems Capital Corporation
General Electric Capital Corporation
Hewlett-Packard Financial Service
Toshiba Financial Services
Dell Financial Services (Baker Botts engagement)
Patterson Belknap Webb & Tyler
United Healthcare of FL, Inc. (Fitch Even engagement)
AARP
Verizon Business
Centro Properties Group
Federal Express Corp.
Greenberg Traurig P.A.
OfficeMax North America; OfficeMax
Ford Credit
American Electric Power
AT&T; AT&T Long Distance; AT&T Pro-Cabs
Cablevision
CenturyLink
Comcast
Duke Energy
Frontier
Global Crossing
National Grid
Sprint
Time Warner Cable
Windstream Corporation


Duff & Phelps has recent (within the last 7 years) or current client relationships with the <u>following entities (or a related entity):</u>

Bryan Cave LLP
Siemens Hearing Instruments, Inc.
US Bancorp
Cisco Systems Capital Corporation
General Electric Capital Corporation

Hewlett-Packard Financial Service
Toshiba Financial Services
Dell Financial Services (Chevez Ruiz engagement)
Patterson Belknap Webb & Tyler
Clifford Chance
United Healthcare of FL, Inc. (Fitch Even engagement)
AARP
BDO Seidman
Verizon Business
Internal Revenue Service
U.S. Securities and Exchange Commission
Developers Diversified Realty Corporation
Centro Properties Group
Greenberg Traurig P.A.
K&L Gates LLP
MCI
Newsday (Cablevision engagement)
OfficeMax North America; OfficeMax
Spectrum Brands
Ford Credit
Rayovac
American Electric Power
American Water & Energy Savers
AT&T; AT&T Long Distance; AT&T Pro-Cabs
Bright House Networks
Cablevision
CenturyLink
Cincinnati Bell
Comcast
DTE Energy
Duke Energy
Earthlink
FPL
FirstEnergy
Frontier
Global Crossing
Jersey Central Power
National Fuel
National Grid
Northland Communications
Progress Energy
PSE&G
Public Storage
Qwest
Sprint
Time Warner Cable

Windstream Corporation

D&P's restructuring group is working or worked with or against the following entities (or its related entity) (in the last 3 years) on other engagements in wholly unrelated matters:

Greenberg Traurig, P.A.
K&L Gates LLP
AlixPartners, LLP
BDO Seidman
Lowenstein Sandler PC

The following are committee members or interested parties in wholly unrelated matters for which D&P's restructuring group is/was financial advisor or investment banker:

Cisco Systems Capital Corp.
Verizon Business
Siemens Hearing Instruments, Inc.
AT&T Entities
General Electric Capital Corporation
Internal Revenue Service

# Ex. "C"

# DUFF & PHELPS SECURITIES, LLC

55 East 52nd Street
31st Floor
New York, NY 10055
T 212.758.2629
F 212.758.2628

June 3, 2011


**Privileged and Confidential**


To:     The Official Committee of Unsecured Creditors of HearUSA, Inc.


Dear Committee Members:


The purpose of this letter is to confirm the understanding and agreement (the "Agreement") with the Official Committee of Unsecured Creditors (the "Committee") of HearUSA, Inc., and its associated debtors in possession (collectively, the "Company" or the "Debtors"), concerning the engagement of Duff & Phelps Securities, LLC ("D&P") by the Committee.

1. <u>Engagement</u>: D&P is being retained to provide financial advisory services for the Committee in connection with the Debtors' restructuring of indebtedness and Chapter 11 cases (the "Chapter 11 Cases") before the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"), including the analysis, consideration and potential development of a chapter 11 Plan of Reorganization.  Upon retention, D&P will work at the direction of the Committee to:

   a) Review and analyze the Company's operations, financial condition, business plan, strategy, and operating forecasts;

   b) Analyze any proposed financing;

   c) Analyze any sale, merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

   d) Assist in the determination of an appropriate go-forward/post emergence capital structure for the Company;

   e) Assist the Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring or Plan of Reorganization, including the value of the securities, if any, that may be issued to the Committee under any such restructuring or Plan;

   f) Evaluate the Company's debt capacity;

   g) If requested by the legal counsel to the Committee, prepare report(s) with respect to any/all proposed financings, the valuation of the Company and/or proposed merger, divestiture, joint-venture, or investment transaction. In addition, D&P will provide expert testimony

Confidential

relating to such report(s) as well as other financial matters arising in connection with the bankruptcy;

    h)  Provide the Committee with other appropriate general restructuring advice and litigation support.

The services and compensation arrangements set forth herein do not encompass other investment banking or financial advisory services not set forth in this paragraph 1.

2.  <u>Term of Agreement</u>: This Agreement shall commence upon its execution by both parties and shall continue unless either party gives 30 days prior written notice of termination to the other party.  Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination (in the event of any termination which is other than on the first of the month, the pro rata portion of the monthly fees referred to in Paragraph 3(a) for the month of termination shall be deemed to be due on the effective date of termination) and expenses incurred on or before the effective date of termination and the provisions of Paragraphs 5, 6, 7, 8, 9 and 10 shall survive the termination of this Agreement and shall remain in effect.

3.  <u>Fees and Expenses</u>:

All fees and expenses hereunder shall be paid subject to application for and allowance by the United States Bankruptcy Court.

    a)  <u>Monthly Fee</u>: The Company shall pay D&P a cash fee of (i) $75,000 per month for the term of the engagement beginning June 3, 2011.  The Monthly Fees shall be paid in advance on the first day of each month and shall be due and payable for all months from the inception of this engagement through the earlier of (i) the termination of this agreement in accordance with section 2 hereof, or (ii) the Effective Date of a confirmed plan in the Chapter 11 Cases.

    b)  <u>Expense Reimbursement</u>: D&P shall be entitled to monthly reimbursement of reasonable out-of-pocket expenses incurred in connection with the services to be provided under this Agreement of up to $1,000 per month.  Monthly Fees plus reimbursement of reasonable and documented out-of-pocket expenses as billed are due upon the first of each month to D&P at the address listed above.

Out-of-pocket expenses shall include, but not be limited to all reasonable travel expenses, meals, computer and research charges, reasonable attorney fees, messenger services and long-distance telephone calls incurred by D&P in connection with the services to be provided to the Committee.

The parties acknowledge that a substantial professional commitment of time and effort will be required by D&P and its professionals hereunder, and that such commitment may foreclose other opportunities for D&P.  Moreover, the actual time and commitment required by the engagement may vary substantially from week to week or month to month, creating 'peak load' issues for D&P.  Given

the numerous issues which may arise in this engagement, D&P's commitment to the variable level of time and effort necessary to address such issues, and the market prices for D&P's engagements of this nature, the parties agree that the fee arrangement hereunder, pursuant to 11 U.S.C. § 328(a), fairly compensates D&P and provides certainty for the Committee.

4. <u>Company Information</u>: The Committee recognizes and confirms that in rendering services hereunder, D&P will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "Information") furnished to D&P by or on behalf of the Committee, the Company or other third parties (including their agents, counsel, employees and representatives). The Committee understands that D&P will not be responsible for independently verifying the accuracy of the Information provided to D&P and shall not be liable for inaccuracies in any such Information. Unless required by subpoena or other valid legal process, and prior written notice is provided to you so that you may challenge such disclosure, we will not disclose to any third party (other than our counsel) any portion of the information so provided by you which constitutes confidential, proprietary or trade secret information except in furtherance of your engagement hereunder. We will not use such confidential information for any purpose other than pursuant to our engagement hereunder.

5. <u>Indemnification</u>: The Company shall provide indemnification and other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference. Further, in the event that an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any action brought by or on behalf of or against the Committee or which otherwise relates to this Agreement or the services rendered by D&P hereunder, the Company shall reimburse D&P and the Indemnified Person for all reasonable expenses incurred by them in connection with such Indemnified Person appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel.

6. <u>Bankruptcy Court Approval</u>: This Agreement is subject to the entry of an order by the Bankruptcy Court in the Chapter 11 Cases approving the retention of D&P pursuant to the terms hereof. The Committee shall use commercially reasonable efforts to obtain prompt authorization of the retention of D&P, nunc pro tunc to the date of this Agreement, on the terms and provisions in this Agreement pursuant to section 328(a) of the Bankruptcy Code. The Committee shall supply D&P with a draft of the retention application and proposed order prior to the filing of such application and proposed order to enable D&P and its counsel to review and comment thereon. The order approving the Agreement and authorizing the retention shall be mutually acceptable to D&P and the Committee.

7. <u>Entire Agreement:</u> This Agreement represents the entire Agreement between the parties and may not be modified except in writing signed by both parties. This Agreement may be executed in counterparts, each of which shall constitute an original. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

8. <u>Affiliation</u>: The Committee recognizes that D&P has been retained only by the Committee and that the Committee's engagement of D&P is not deemed to be on behalf of and is not intended to and does not confer rights upon the Company or any of its security holders, officers, agents employees or representatives, or any individual members of the Committee. No one other than the Committee is authorized to rely upon the engagement of D&P hereunder or any statements, advice, opinions or

conduct of D&P.

9. <u>Credit:</u>  The Committee acknowledges and agrees that D&P may, at its option and expense, place a customary "tombstone" announcement in such newspapers and periodicals as it may choose, describing its services in connection with any transaction.

10. <u>Governing Law / Jurisdiction</u>: This Agreement will be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such state. Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to the Bankruptcy Court in the Chapter 11 Cases.  If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the Borough of Manhattan in the City of New York, to whose jurisdiction each of the parties hereto hereby irrevocably submit.  Nothing in this paragraph shall pertain to or affect the authority of a bankruptcy court having jurisdiction over the Company to consider and rule upon D&P's applications for interim or final compensation pursuant to this Agreement.

11. <u>Other Matters</u>: If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records.  Upon execution by both parties, this letter will constitute a legally binding Agreement between the Committee and D&P.

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

Duff & Phelps Securities, LLC

By:

Brent Williams

Its:    Managing Director

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HEARUSA, INC.


By: _____

Name:
Title:

## Schedule I

This Schedule I is a part of and is incorporated into that certain letter agreement (the "Agreement"), dated June 3, 2011 by and between the Official Committee of Unsecured Creditors (the "Committee") of HearUSA, Inc. (together with its subsidiaries and affiliates, the "Company") and Duff & Phelps Securities, LLC ("D&P"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

The Company shall indemnify and hold harmless D&P and its affiliates and their respective directors, officers, employees, attorneys and other agents appointed by any of the foregoing and each other person, if any, controlling D&P or any of its affiliates (D&P and each such person and entity being referred to as an "Indemnified Person"), from and against any finally determined losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as they are incurred in investigating, preparing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "Actions"), arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement, the transaction contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "Services"); provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted from such Indemnified Person's gross negligence or willful misconduct in connection with any of the advice, actions, inactions or services referred to above. The Company shall also reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I). Such Indemnified Person shall reasonably cooperate with the defense of any Actions.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability which the Company or any other person may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure. The Company shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to D&P. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Company, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Company shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld). In addition, the Company will not, without prior written consent of D&P (which shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action.

In the event that the foregoing indemnity is not available to an Indemnified Person in accordance with the Agreement pursuant to the requirements of applicable law, the Company shall contribute to the Liabilities and Expenses paid or payable by such Indemnified Person in such proportion as is appropriate to reflect (i) the relative benefits to the Company, on the one hand, and to D&P, on the other hand, of the matters contemplated by the Agreement, or (ii) if the allocation provided by the immediately preceding clause is not permitted by the applicable law, not only such relative benefits but also the relative fault of the Company, on the one hand, and D&P, on the other hand, in connection with the matters as to which such Liabilities or Expenses relate, as well as any other relevant equitable considerations.  For purposes of this paragraph, the relative benefits to the Company, on the one hand, and to D&P, on the other hand, of the matters contemplated by this Agreement shall be deemed to be in the same proportion as (a) the total value paid or received or contemplated to be paid or received by the Company in the transaction, whether or not any transaction is consummated, bears to (b) the fees paid or payable to D&P under the Agreement.

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Committee for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Company or the Committee that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services.

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by D&P; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.